28 Pa. Commonwealth Ct. 415 (1977)
In Re: Appeal of George Benech and Anna Benech from Decision of Fawn Township Zoning Hearing Board. Ronald R. Porter, Appellant.
No. 378 C.D. 1975.
Commonwealth Court of Pennsylvania.
Argued October 29, 1976.
February 1, 1977.
Argued October 29, 1976, before Judges CRUMLISH, JR., KRAMER and MENCER, sitting as a panel of three.
*416 David W. Craig, with him Frank P. Paz, and Baskin, Boreman, Wilner, Sachs, Gondelman & Craig for appellant.
Joseph A. Fricker, Jr., with him Fricker, Zimmer & Dice, for appellee.
OPINION BY JUDGE MENCER, February 1, 1977:
Fawn Township, Allegheny County, is a sparsely populated township graced with breathtaking rural amenities. It is also graced with a motorcycle racecourse operated on an 80-acre tract which was recently rezoned at the request of its owner, Ronald R. Porter, so as to allow the course to operate legally. The suit of Porter's aggrieved neighbors, attacking the validity of the rezoning and thereby seeking to close the racecourse, was successful in the Allegheny County Court of Common Pleas, and Porter's appeal is now before us.
Porter owns over 100 acres of land in an isolated, rural section of Fawn Township, which had been zoned R-2 Rural Residential. In addition to a conforming mine-refuse landfill, the tract was being used primarily for a cross-country motorcycle racecourse, *417 which is not a legal use under the R-2 classification.[1] Porter applied for an amendment to the zoning map of the township so that 80 acres of his land would be rezoned either Industrial or Commercial, whichever would be applicable to accommodate the operation of a racetrack. The matter was referred to the township planning commission which, after a hearing at which the sole consideration was the racecourse use, recommended adoption of a rezoning ordinance. The township's board of supervisors thereafter enacted an ordinance rezoning Porter's land C-2 Neighborhood and Highway Commercial.[2] Interestingly, the ordinance did not affect a tract of land owned by one Hunter which is completely surrounded by the rezoned Porter property and which remains R-2. In effect, then, the ordinance created a doughnut-shaped commercial zone in an isolated rural area.
Several of Porter's neighbors objected to the rezoning and appealed the enactment of the ordinance to *418 the Fawn Township Zoning Hearing Board (ZHB), alleging that the ordinance constituted discriminatory zoning, that it constituted an unreasonable and arbitrary exercise of police power, and that it did not conform to the township's comprehensive plan. When the ZHB upheld the ordinance, the neighbors appealed to the Court of Common Pleas of Allegheny County.
The common pleas court heard the appeal de novo. After taking testimony and viewing the tract in question, as well as reviewing the record from below, it invalidated the ordinance because it was unjustifiably and arbitrarily discriminatory.[3] Porter has appealed the court's decision to us.
In its decision, the lower court correctly noted that, where additional evidence is taken, the court is not to review the action of the ZHB but rather to decide the case on the merits. On appeal from the lower court's decision, the issue before us is whether the court manifestly abused its discretion or committed an error of law. Drop v. Board of Adjustment, 6 Pa. Commonwealth Ct. 64, 293 A.2d 144 (1972); Pantry Quik, Inc. v. Zoning Board of Adjustment, 1 Pa. Commonwealth Ct. 326, 274 A.2d 571 (1971). We hold that it did neither.
The most troublesome question posed by this case is whether the lower court erred in concluding that the commercial zoning of an 80-acre "doughnut" tract in an isolated rural environment clearly constituted illegal, discriminatory zoning. Spot zoning, a form of discriminatory zoning, has been defined as "[a] singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic *419 detriment. . . ." Mulac Appeal, 418 Pa. 207, 210, 210 A.2d 275, 277 (1965). In Mulac Appeal, our Supreme Court noted that there is no formula which can be applied with mathematical certainty to determine whether a particular situation constitutes spot zoning. The Court went on to state:
Clearly, the size of the property involved is only one of the determining factors. What is most determinative is whether the parcel in question is being singled out for treatment unjustifiably differing from that of similar surrounding land, thereby creating an `island' having no relevant differences from its neighbors. Id. at 210, 210 A.2d at 277.
This Court has mentioned topography, location, and characteristics of the tract as factors which may be taken into account. Pollock v. Zoning Board of Adjustment, 20 Pa. Commonwealth Ct. 641, 342 A.2d 815 (1975). We have been cautioned by the Supreme Court, however, not to limit our inquiry to the mere physical aspect and characteristics of the land, but also to consider how the rezoning affects the public health, safety, morals, and general welfare and how it relates to the township's comprehensive plan. Schubach v. Silver, 461 Pa. 366, 382-83 n. 14, 336 A.2d 328, 336 n. 14 (1975). These factors, when assessed, must clearly indicate that a zoning ordinance is arbitrary and unreasonable and has no substantial relation to the general welfare of the public. If the validity of the legislation is fairly debatable, the legislative judgment must be allowed to control. Id. at 380-81, 336 A.2d at 335.
With these guidelines in mind, we turn to an evaluation of the instant facts.[4] There can be no question *420 that Porter's property is being treated differently both from the rural residential land surrounding it and from the Hunter property, which it surrounds. Indeed, when Hunter once tried to set up a concession stand on his residential property, the township was informed, and the stand was closed. Therefore, our inquiry is limited to determining whether there exists a justification for such a differential treatment other than the aggrandizement of Porter.
The size of the rezoned area, 80 acres, is considerably larger than any area previously found to be the object of spot zoning. Of course, we are dealing not with several acres of land in an urban or suburban environment but rather with a single parcel in an isolated rural setting. The court below, after viewing the area, suggested that in relation to such a setting Porter's 80 acres could almost be considered minimal. Nevertheless, this is the only factor which even vaguely militates against a conclusion of clearly arbitrary legislation. In this remarkably unique case, every other factor considered by the court below suggests the invalidity of the ordinance. Considering topography, the court could find no difference between the land zoned commercial and the land remaining rural residential: the entire area is hilly. Nor does the location of the Porter property suggest any justification for unique treatment because the whole area is isolated. Clearly, Porter's land is neither more nor less isolated than the property it surrounds or than the property that surrounds it. The character of the two *421 districts is substantially the same, both being wooded. Furthermore, the court accepted the testimony of various residents who complained about noise, and it found that the racecourse use was detrimental to the general welfare. Finally, the court found that the rezoning was not in accordance with the township's zoning scheme. The court reached this finding by accepting the opinion of Fawn Township's consulting engineer that, given the topography of the Porter property, the character of the surrounding area, the substandard access road, and the general long-range comprehensive scheme, a C-2 zoning was entirely improper.[5]
Apparently, the township did not seriously consider either the foregoing factors or the appropriateness of any uses allowed in a C-2 district other than Porter's racecourse. In fact, the court below found the only factor considered was Porter's desire to operate the course legally. Certainly, the arbitrary effect of this municipal myopia can be illustrated in no better way than by the residential island which remains inexplicably within, and surrounded by, Porter's commercial sea. This fact, perhaps even more than the isolated rural setting, distinguishes the case at bar from prior spot zoning decisions and compels us to agree with the court below that an 80-acre "doughnut" *422 rezoning constitutes arbitrary and unjustifiably discriminatory zoning.
Order affirmed.

ORDER
AND NOW, this 1st day of February, 1977, the order of the Court of Common Pleas of Allegheny County, dated March 7, 1975, is affirmed.
NOTES
[1] A junkyard and an auto repair garage were also operating as legal nonconforming uses. However, together these uses occupy a total of 232 square feet, an insignificant area.
[2] The applicable zoning ordinance provision reads:

`C-2' NEIGHBORHOOD AND HIGHWAY COMMERCIAL
In `C-2' Neighborhood and Highway Commercial Districts only the following structures and uses are permitted:
A. Retail stores and shops.
B. Restaurants.
C. Service establishments such as beauty shops, barbershops, shoe repair, minor appliance repair and dry cleaning pickup.
D. Automobile service stations.
E. Auto repair garages, provided all operations are conducted within the confines of a building established for such purposes.
F. Motels.
G. Drive-in uses including retail, food and amusement centers, both private and public.
Apparently the racecourse use was considered an amusement center.
[3] See generally R. Ryan, Pennsylvania Zoning Law and Practice, § 3.4 (1976).
[4] Normally, it is incumbent upon a lower court deciding a zoning case on the merits to set out specific findings of fact to facilitate appellate review. A failure to do so may result in a remand. Boron Oil Company v. Baden Borough, 6 Pa. Commonwealth Ct. 583, 297 A.2d 833 (1972). However, through an extensive and time-consuming review of the opinion of the court below and the uncontradicted facts of record, we conclude that we have a sufficient basis for review. See Drop, supra at 66 n. 1, 293 A.2d at 145 n. 1; Pantry Quik, supra (concurring opinion by Judge CRUMLISH).
[5] It is contended that the letter from which the engineer's opinion was taken was inadmissible hearsay and therefore not properly before the lower court. We disagree. Section 1010 of the Pennsylvania Municipalities Planning Code, 53 P.S. § 11010, added by the Act of June 1, 1972, P.L. 333, to the Act of July 31, 1968, P.L. 805, as amended, 53 P.S. § 10101 et seq., gives the lower court the power to make findings of fact based on the record below as supplemented by additional evidence taken. Since the letter in question was part of the record below, it can properly be the basis for a finding by the court.