In Re: Appeal of Langmaid Lane Homeowners Association et al. of the Granting of a Building Permit to H. C. F. Inc. Langmaid Lane Homeowners Association et al., Appellants.

Argued June 8, 1983, before Judges WILLIAMS, JR., CRAIG and MACPHAIL, sitting as a panel of three.

*Charles J. Duke, Pecora & Duke,* for appellants.

*R. T. Mutzabaugh, Mutzabaugh, Mutzabaugh & Saunders,* for appellee, H.C.F., Inc.

*Murray R. Garberg,* for appellees, Bradford Township and Bradford Township Zoning Hearing Board.

OPINION BY JUDGE MACPHAIL, September 6, 1983:

Before this Court is the appeal of the Langmaid Homeowners Association (Association)[1] from an order of the Court of Common Pleas of McKean County denying the appeal of the Association and ordering the filing of a bond as a condition precedent to further appeals. For the reasons which follow, we affirm the Common Pleas Court's order.

Much of the history of this case is comprehensively described in this Court's earlier opinion in *Langmaid*

---

[1] And certain named individuals, all of whom will be collectively referred to as "Association" in this opinion.

*Homeowners Appeal (Langmaid I)*, 65 Pa. Commonwealth Ct. 1, 441 A.2d 507 (1982), and we shall reiterate only those portions of that history now relevant. In 1979, Health Care Facilities, Inc. (HCF) had sought to obtain zoning permission to construct a nursing home on Langmaid Lane in Bradford Township, McKean County. The proposed site of the facility, however, was in both "R-10" and "R-10A" districts and under the ordinance in effect a nursing home was not a permitted use in either district. On May 5, 1980, Bradford Township amended its zoning ordinance to permit nursing homes in "R-10" and "R-10A" districts. On May 21, 1980, HCF obtained approval from the township zoning officer for its preliminary plans for the proposed nursing home on Langmaid Lane. The Association then filed an appeal to the Bradford Township Zoning Hearing Board (Board), pursuant to the provisions of Section 1005 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §11005; the Board subsequently denied the Association's appeal.

HCF petitioned the Court of Common Pleas for an order requiring the Association to post an indemnity bond to protect HCF from damages due to the delay in construction resulting from the uncertainties caused by the appeal. A bond in the amount of $350,000 was ordered by that Court on August 5, 1980. That bond was subsequently vacated by order of this Court in *Langmaid I* due to the trial court's failure to permit evidence going to the merits of the Association's challenge.[2]

On remand, the parties agreed to a determination of the merits of the Association's appeal at the same

---

[2] *See* Section 1008(4) of the MPC, 53 P.S. §11008(4). The present author concurred in the result in *Langmaid I*, based upon corresponding language in Section 916 of the MPC, 53 P.S. §10916.

time that the Court ruled on the bond petition. Two additional hearings were held at which the parties were afforded the opportunity to present evidence on the merits. On August 13, 1982, the Common Pleas Court issued its decision and order, ruling on the merits to deny the appeal; the Court also ruled that the appeal was frivolous and for the purpose of delay and thus reinstated the bond in the amount of $350,000. The Association then filed its appeal to this Court.

Turning first to the merits of the Association's appeal,[3] we find presented to us a variety of propositions which could at best be described as novel. First, the Association contends that the addition of a nursing home use to the permitted uses in a residential area has resulted in the total exclusion of an exclusively residential zoning district and thus would be unconstitutional under the exclusionary zoning principle enunciated in *Girsh Appeal*, 437 Pa. 237, 263 A.2d 395 (1970).[4] Such a proposition is patently untenable. Under the Association's theory, every landowner could come to court and claim the right to be in a district exclusively limited to his use. Such an interpretation would turn the principle of exclusionary zoning completely on its head, making a rule designed to open up communities to more uses into a rule which would bar

---

[3] Our review of the record indicates that the Association has not filed any bond prior to the taking of this appeal. However, there has been no motion to quash that part of this appeal concerning the merits of this case. Since the merits must be examined to determine whether this appeal is frivolous and for purposes of delay, 53 P.S. §11008(4), we shall at this time also give full review to the merits.

[4] We deem it unnecessary now to refer to the wealth of other cases which have refined the concept of exclusionary zoning. Suffice to say that none of these cases provide even a hint of support for the Association's contention here.

added uses. Residential *uses*[5] have not been prohibited in Bradford Township by the amendments here in question and we can find absolutely no justification in the law for applying exclusionary zoning principles to provide for "pure" districts.

The Association also contended before the trial court that the rezoning here in question was a subtle form of spot zoning. *See, e.g., Schubach v. Zoning Board of Adjustment*, 440 Pa. 249, 270 A.2d 397 (1970).[6] However, as stated in *Schubach*, "spot zoning" involves the creation of an "island" district in which the uses permitted irrationally differ from the uses permitted elsewhere. *Id.* at 253-54, 270 A.2d at 399. Here there is no "island." As found by the trial court, the area involved in the amendment is huge, comprising a large portion of the Township's land. The amendments added nursing homes as a permitted use in all residential districts. Thus there was no "spot zoning."

We shall now move to a discussion of the Association's contention that the supervisors' decision to add nursing homes as a permitted use to a residential district was not rational and was not a valid exercise of the police power.

We are, of course, cognizant of "[t]he oft repeated, although ill defined, limitation upon the exercise of the zoning power [which] requires that zoning ordinances be enacted for the health, safety, morals or general

---

[5] *Cf. Daley v. Zoning Hearing Board of Haverford Township* (No. 1228 C.D. 1982, filed June 16, 1983). (In the area of nonconforming uses, a use is not defined by its prior district classification but rather by the specific use of the property in question.)

[6] It does not appear from the briefs filed to this Court that the Association has preserved this issue for further appeal on the merits. However, since a brief discussion of this issue will clarify other issues to be handled in this opinion and since the possible merits of this issue were relevant to the Common Pleas Court's determination of whether the Association's appeal was frivolous, we shall examine the spot zoning contention.

welfare of the community." *National Land and Investment Co. v. Easttown Township Board of Adjustment*, 419 Pa. 504, 522, 215 A.2d 597, 607 (1965). There can be no doubt, and the Association does not dispute, that zoning for a nursing home use is a valid exercise of the police power. The Association, however, desires the judicial branch to delve further into this matter. It desires an examination into the rationality of the supervisors' decision; in effect, a determination of whether the supervisors chose the best place to add a nursing home use or whether there was a "reason" for choosing to amend the zoning classification of the Langmaid Lane area.

Our Supreme Court has stated that "with respect to zoning enactments, judges should not substitute their individual views for those of the legislators as to whether the means employed are likely to serve the public health, safety, morals or general welfare." *Bilbar Construction Co. v. Easttown Township Board of Adjustment*, 393 Pa. 62, 72, 141 A.2d 851, 856 (1958). Having determined that there does not here exist a valid claim of discriminatory spot zoning, we must consider the Association's claim to be no different from those situations in which litigants contend that the zoning district boundaries have been drawn incorrectly, or that an area has been wrongly classified or placed next to an incompatible use in a different district. As stated by Robert S. Ryan in his treatise on zoning: "[T]hese claims have been singularly unsuccessful, for the courts cannot become involved in a general review of the wisdom of zoning boundaries without assuming almost the entire legislative function." R. S. Ryan, Pennsylvania Zoning Law and Practice, §3.4.7, at 73. While the supervisors might have made a better choice in location, the choice was

theirs to make and the remedy for any such error is not with the courts, but rather the ballot box.[7]

Finally, the Association asserts that the rezoning does not comply with a comprehensive or rational plan of development. Suffice to say that comprehensive plans are not binding upon later actions regarding the enactment or amendment of a zoning ordinance; therefore, the Association's contentions in this regard are totally without merit. *See, Cleaver v. Board of Adjustment*, 414 Pa. 367, 200 A.2d 408 (1964); *Todrin v. Board of Supervisors of Charles Township*, 27 Pa. Commonwealth Ct. 583, 367 A.2d 332 (1976).

Having determined that all of the substantive issues raised by the appeal were without merit, we shall now examine the trial court's decision to order a bond from the Association in this matter. The standard for ordering a bond under Section 1008(4) of the MPC is whether the filing of the appeal was frivolous and was for the purpose of delay. The Association first of all contends that the trial court erred in its definition of "frivolous." The Court in its opinion defined frivolous as "an action in which the plaintiff's realistic chances of ultimate success are slight." (*quoting Clark v. Zimmerman*, 394 F. Supp. 1166, 1178 (M.D. Pa. 1975)). The Association presents as an alternative definition of a frivolous appeal as "one presenting no justiciable questions and so readily recognizable as devoid of merit on face of record that there is little prospect that it can ever succeed." Black's Law Dictionary 796 (4th

---

[7] The fact that this is an established residential area is not relevant to whether any "reasons" were needed to "change" its "character" to include a nursing home. There is no vested right in the continuation of a certain zoning classification and there exists no distinction in the law between zoning changes of developed versus undeveloped land. *See Kelly v. Zoning Board of Adjustment*, 2 Pa. Commonwealth Ct. 136, 276 A.2d 569 (1971).

ed. 1968).[8] We perceive no discernable difference in the two definitions presented. The key point in both definitions is a determination of whether, either as a matter of fact or law, the appellant's contentions have any likelihood of success. The question involves more than just whether the appellant may win or lose, but rather involves whether the continuation of the contest is reasonable. In terms of the present matter, we are in complete agreement with the trial court judge that the Association's appeal in this matter was frivolous. While some of the issues presented by appellants might be termed "novel," not one of them had any support in a reasoned interpretation of Pennsylvania zoning law. As the issues presented had no reasonable chance of success, the appeal must be deemed frivolous.

The Association also contends that, under Section 1008(4) of the MPC, a separate finding of delay must be made and that the trial court did not make said determination. Whether it is in fact necessary for such dual findings we need not now decide[9] since it is clear from the trial court's decision that that court did determine that the Association's appeal was also for the purposes of delay.

Finally, the Association seeks a remand in this case in order to further question the supervisors regarding their reasons for changing the zoning. The trial court refused to permit such questioning on the basis that the Association was seeking to impermissibly inquire into motivation. *See Gladwyne Colony, Inc. v. Town-*

---

[8] A similar definition can be found in the most recent edition. Black's Law Dictionary 601 (5th ed. 1979). Black's definition has recently been adopted by our Court in *Collis v. Zoning Hearing Board of Wilkes-Barre*, (Nos. 1679 C.D 1982 and 2310 C.D. 1982, filed September 1, 1983).

[9] We find it hard to imagine any reason for filing a frivolous appeal by a person seeking to prevent the use of another's land if not for delay.

*ship of Lower Merion*, 409 Pa. 441, 187 A.2d 549 (1963). The Association now contends that it intended only to inquire into subjects such as traffic patterns and growth. We note first the general rule that the admissability of evidence is within the trial court's discretion and will be reversed on appeal only for a clear abuse of discretion. *Lewis v. Mellor*, 259 Pa. Superior Ct. 509, 515, 393 A.2d 941, 944 (1978). We find no such abuse of discretion here. Further, as we have indicated previously, the necessity or desirability of adding a nursing home to the permitted uses in the districts is within the legislative prerogative of the supervisors; thus there is no reason to order a remand.

Order affirmed.

ORDER

The order of the Court of Common Pleas of McKean County in the above captioned matter dated August 13, 1982, is hereby affirmed.