628 A.2d 1223

**M. Rust SHARP, Appellant,**

v.

**The ZONING HEARING BOARD OF the TOWNSHIP OF RADNOR and Villanova University, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Nov. 19, 1992.

Decided July 9, 1993.

Petition for Allowance of Appeal Denied Nov. 29, 1993.

52

54

Vahan H. Gureghian, for appellant.

Nicholas J. Caniglia, for appellees.

Before CRAIG, President Judge, SMITH, J., and NARICK, Senior Judge.

SMITH, Judge.

M. Rust Sharp appeals from the June 4, 1991 order of the Court of Common Pleas of Delaware County which affirmed the decision of the Radnor Township Zoning Hearing Board (Board) rejecting his procedural and substantive challenges to the Township Zoning Ordinance No. 90–07 rezoning a tract of land owned by Villanova University from R–1 Residential to Planned Institutional zoning district. The issues raised on appeal are whether Ordinance No. 90–07 is invalid due to procedural defects in its enactment; and whether rezoning of the University's land constitutes arbitrary and unreasonable spot zoning. The University argues that no jurisdiction exists in this Court to hear the appeal.

## I.

The land in question, known as the Morris Tract (Tract), consists of approximately forty-nine acres and is located west of the University's main campus and north of the Penn Central Railroad line between Wistar and Spring Mill Roads. On the east, the Tract shares a common 1855-foot boundary with fourteen acres of land which is zoned Planned Institutional and used by the University for dormitories, classrooms and faculty offices. On the north, the Tract is bounded by County Line Road dividing Delaware and Montgomery Counties. The other immediate area of the Tract is currently zoned residential. Sharp is the owner of adjoining residential property.

On November 6, 1987, the University filed a petition with the Township seeking rezoning of the Tract from R–1 Residential to I–Institutional. By later ordinance enactment, the Township established the new classification of Planned Institutional zoning district. At the December 11, 1989 public hearing on the petition held before the Township Board of Commissioners, the University proposed development of the Tract for dormitories to accommodate 1200 students and presented, inter alia, a master plan, long-range development plan and traffic study. The University also presented covenants negotiated and agreed upon by the University and neighboring property owners to be executed and recorded upon approval of rezoning and the development plan. The covenants set forth various specific conditions relating to the development including buffers, setbacks, building heights, fences, landscapes, lighting, and traffic and security measures. The Delaware County and Township Planning Commissions recommended approval of the requested rezoning.

After the public hearing, the Commissioners adopted Ordinance No. 90–07 on February 26, 1990 rezoning the Tract from R–1 Residential to Planned Institutional zoning district. The proposed development plan was also approved the same day. On March 23, 1990, Sharp appealed to the Board alleging that the Commissioners acted arbitrarily and capriciously in adopting Ordinance No. 90–07 because they denied

him a meaningful opportunity to present evidence in opposition to rezoning and failed to give meaningful review of the proposal and comments from governmental entities. Sharp also alleged that rezoning of the Tract constitutes illegal spot zoning. The Board dismissed Sharp's appeal and the trial court affirmed.[1]

## II.

■ Before reaching the merits, this Court will address the University's contention that this Court lacks jurisdiction in this case because Sharp failed to comply with procedures set forth in the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202, for appeal from enactment of a zoning ordinance amendment by the governing body; and enactment of a zoning ordinance amendment is a legislative act not subject to judicial review. The Board denied the University's motion to dismiss for lack of jurisdiction; the trial court however did not address this issue.

Section 909.1(b)(5) of the MPC, added by Section 87 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10909.1(b)(5), sets forth the governing body's exclusive jurisdiction in relevant part:

(b) The governing body ... shall have exclusive jurisdiction to hear and render final adjudication in the following matters.

. . . . .

(5) All petitions for amendments to land use ordinances, pursuant to the procedures set forth in section 609. Any action on such petitions shall be deemed legislative acts, provided that nothing contained in this clause shall be deemed to enlarge or diminish existing law with reference to appeals to court.

1. This Court's scope of review in zoning cases where, as here, the trial court took no additional evidence is limited to determining whether the Board committed an error of law or an abuse of discretion. *Isaacs v. Wilkes–Barre City Zoning Hearing Board,* 148 Pa.Commonwealth Ct. 578, 612 A.2d 559 (1992).

Section 1002–A of the MPC, added by Section 101 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11002–A, provides "[a]ll appeals from all land use decisions rendered pursuant to Article IX [53 P.S. §§ 10908.1–10916.2] shall be taken to the court of common pleas of the judicial district wherein the land is located and shall be filed within 30 days after entry of the decision...." The University argues that pursuant to Sections 901.1(b)(5) and 1002–A, the Commissioners as a governing body had exclusive jurisdiction over a petition for rezoning and their decision should have been appealed within thirty days to the trial court and not to the Board; thus, Sharp's appeal to the trial court was untimely and should be quashed.

■ This Court has no power to interfere with the Commissioners' legislative process and their decision to grant or deny the application is not subject to direct judicial review. Section 909.1 of the MPC; *Greensburg Planning Commission v. Cabin Hill, Inc.*, 19 Pa. Commonwealth Ct. 324, 339 A.2d 594 (1975). However, once rezoning is granted, its validity can be challenged pursuant to procedures set forth in the 1988 revision to the MPC. Section 909.1(a)(1),(2) of the MPC provides:

(a) The zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in the following matters:

(1) Substantive challenges to the validity of any land use ordinance, except those brought before the governing body pursuant to sections 609.1 and 916.1(a)(2) [procedures for landowners' curative amendments].

(2) Challenges to the validity of a land use ordinance raising procedural questions or alleged defects in the process of enactment or adoption which challenges shall be raised by an appeal taken within 30 days after the effective date of said ordinance.

Since the Board under the MPC had exclusive jurisdiction to determine the validity of Ordinance No. 90–07, the University's contention that Sharp's challenges should have been presented directly to the trial court within thirty days is in error.

58 

 Next, the University contends that this appeal should be dismissed for lack of jurisdiction because there is no case or controversy ripe for litigation. Validity of the enactment of ordinances will not be decided *in vacuo* but only after their actual application to a litigant. *Roeder v. Hatfield Borough Council,* 439 Pa. 241, 266 A.2d 691 (1970). Under Section 909.1(a)(2) of the MPC, a validity challenge on procedural grounds must be raised promptly within thirty days after the effective date of the ordinance, and may be decided in the abstract. *Pheasant Run Civic Organization v. Board of Commissioners of Penn Township,* 60 Pa. Commonwealth Ct. 216, 430 A.2d 1231 (1981). *See also Association of Concerned Citizens of Butler Valley v. Butler Township Board of Supervisors,* 135 Pa. Commonwealth Ct. 262, 580 A.2d 470 (1990).

 Under Section 916.1(b) of the MPC, "[p]ersons aggrieved by a use or development permitted on the land of another by an ordinance" are allowed to challenge its validity on substantive grounds. Thus, the necessary precondition to a substantive challenge to a land use ordinance is the existence of a specific use to which the property is sought to be developed. The record here undeniably demonstrates sufficient facts to satisfy the precondition to a substantive challenge to the ordinance. The University took advantage of the rezoning by presenting an application for approval of its preliminary land development plan which was prepared following more than two years of negotiations with neighboring property owners and approved on the same day as adoption of the ordinance. *See Langmaid Lane Homeowners Ass'n Appeal,* 77 Pa. Commonwealth Ct. 53, 465 A.2d 72 (1983) (the validity of rezoning was challenged following approval of preliminary plans for a proposed nursing home).

III.

 A zoning ordinance is presumed to be valid and constitutional, and the challenging party has the heavy burden of proving otherwise. *Schubach v. Silver,* 461 Pa. 366, 336 A.2d 328 (1975). Sharp contends that Ordinance No. 90–07 is

procedurally infirm because the Commissioners, by holding only one hearing, failed to provide him a meaningful opportunity to present evidence in opposition to rezoning and the development proposal. Section 609(b) of the MPC, 53 P.S. § 10609(b), provides that "[b]efore voting on the enactment of an amendment, the governing body shall hold a public hearing thereon, pursuant to public notice." Although Section 609(d) requires additional public hearings under certain circumstances inapplicable here where the proposed amendment is changed to include additional land, there is no other express provision in the MPC requiring more than one public hearing before enacting a zoning ordinance amendment.

Sharp improperly relies upon Section 302(b) of the MPC, 53 P.S. § 10302(b), to support his view that more than one public hearing is required. Section 302(b) applies to the adoption or amendment of a comprehensive plan, not to the enactment of zoning ordinance amendments, and requires that the planning agency hold at least one public meeting and that in its review, the planning agency shall consider comments of various governmental bodies including, among others, contiguous municipalities. Sharp also relies upon Section 135–128 of the Ordinance which provides that "[a]t any public hearing on a proposed amendment, full opportunity to be heard shall be given to any resident of the township and all parties in interest." Sharp was present at and participated in the December 11, 1989 public hearing before the Commissioners. He also admitted that several months before the December 11, 1989 hearing, he attended meetings between the University and the neighboring property owners to negotiate terms of the covenants related to the proposed development. Hence, Sharp's contention that he was denied full opportunity to be heard is simply not borne out by the record.

A public hearing on the proposed amendment of a zoning ordinance under Section 609 of the MPC is "legislative in nature, intended to give members of the public the opportunity to air their views to the governing body on the proposal." *Perin v. Board of Supervisors of Washington Township,* 128

Pa. Commonwealth Ct. 313, 322, 563 A.2d 576, 580 (1989). The due process attributes of other quasi-judicial hearings are therefore inapplicable to a public hearing held before the governing body on proposed zoning amendments. *Id.* Since the public hearing before the Commissioners provided Sharp an opportunity to express his views on the proposed rezoning, Sharp's challenges to Ordinance No. 90–07 on procedural grounds must fail.[2]

## IV.

■■■■■■ Sharp further argues that Ordinance No. 90–07 constitutes arbitrary and unreasonable spot zoning with no substantial relationship to the public health, safety or welfare of the Township and its residents. Before a court may declare an ordinance unconstitutional, the challenging party must clearly establish that, in this instance, the rezoning represents discriminatory spot zoning and is therefore unconstitutional, and if the validity is debatable, the legislative judgment is allowed to control. *Bilbar Construction Co. v. Easttown Township Board of Adjustment,* 393 Pa. 62, 141 A.2d 851 (1958); *Oravets Appeal,* 97 Pa. Commonwealth Ct. 210, 509 A.2d 1342 (1986). Spot zoning has been defined as "a singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment. . . ." *Mulac Appeal,* 418 Pa. 207, 210, 210 A.2d 275, 277 (1965). There is no precise formula for determining whether a classification of property constitutes spot zoning, and cases should be decided on the facts guided by case law. *Id.*

■■■■■■ The size of the property is only one determining factor. *Mulac Appeal.* The topography, location and characteristics of the land are also among the factors to be considered. *Knight v. Lynn Township Zoning Hearing Board,* 130

---

2. At the hearing, Sharp rejected the Commissioners' offer that he could present evidence in opposition to the proposed rezoning at its public meeting scheduled for February 1990. In the equity action subsequently filed by Sharp, the trial court refused to issue an injunction enjoining the Commissioners' vote on rezoning.

Pa. Commonwealth Ct. 617, 568 A.2d 1372 (1990). The most important factor, however, is whether the rezoned land is being treated unjustifiably different from similar surrounding land, thereby creating an "island" having no relevant differences from its neighboring property. *Schubach.* The Court must also consider the effect of rezoning on public health, safety, morals and general welfare; and the relationship of rezoning to the comprehensive plan. *Schubach; Knight.*

The rezoned area here is contiguous to fourteen acres of land zoned Planned Institutional and used for University facilities including dormitories. Across Spring Mill Road is the eighty-eight acre main campus of the University. In addition, across Lancaster and Ithan Avenues nearby are sixty-six acres of land zoned Planned Institutional. The University also owns fifty-two acres of commercially zoned land across Lancaster Avenue and the main campus. Considering the entire surrounding area, the rezoned area does not represent such "a small area" as may form the object of spot zoning. *See Langmaid Lane* (where the area rezoned for nursing homes in an all residential district was huge, comprising a large portion of the township land; an "island" of zoning district was not created). *Compare Porter Appeal,* 28 Pa. Commonwealth Ct. 415, 368 A.2d 828 (1977) (a single parcel of eighty-acre, doughnut-shaped tract surrounded by large isolated rural setting may be the object of spot zoning).

In *Cleaver v. Board of Adjustment,* 414 Pa. 367, 200 A.2d 408 (1964), the Pennsylvania Supreme Court found the downzoning of an eleven-acre tract from R–3 to R–4 to permit construction of apartment buildings was justified because a large part of the surrounding land including adjoining properties was the same or virtually the same classification as the tract in question. Similarly, since the Tract is immediately surrounded by land used and permitted to be used for the same institutional purposes and also by the commercially zoned area nearby, rezoning did not create an island of more or less restricted use within a district zoned for different uses. *Id.; Upper Darby Township Appeal,* 413 Pa. 583, 198 A.2d 538 (1964).

62

Although a tract adjoining other institutionally zoned land is not automatically entitled to rezoning for the same purposes, "to promote the orderly development of a community the zoning authorities must be allowed to put a piece of property to the use which is most beneficial to the comprehensive plan, i.e., establish a land use which best blends in with surrounding different uses." *Schubach,* 461 Pa. at 386, 336 A.2d at 338. Moreover, Section 606 of the MPC, 53 P.S. § 10606, requires that zoning ordinances should reflect the policy goals of the municipality as set forth in a statement of community development objectives. The Township's community development objectives, set forth in its comprehensive plan adopted in 1988, recognized a need for additional on-campus housing for all secondary educational institutions to alleviate the adverse impact caused by insufficient on-campus housing. The president of the University testified that the Township is experiencing problems caused by the off-campus housing of students and that the University currently can provide on-campus housing for only 50% of its students. Sharp does not dispute the University's need for additional on-campus housing.

Sharp's witnesses testified that the proposed development would change the residential character of the neighborhood and cause overcrowding, increased traffic volume and diminish the value of the property in surrounding areas. Additionally, according to Sharp, the rezoning has no effect other than to confer special privileges to Villanova's private interests. Where there exists a need for specific development in the community, rezoning for that purpose has substantial relation to the public health, safety, morals and general welfare of the community. *Schubach.* Because a need for more on-campus housing in the community is not disputed, rezoning has a substantial relation to the public health, safety, morals and general welfare of this particular community.

Moreover, since rezoning merely extended a preexisting institutional use in accordance with legislative judgment, this Court may not substitute its views for those of the

Commissioners as to whether the means employed by enactment of the zoning ordinance is likely to serve the public health, safety, morals or general welfare. *Bilbar Construction.* *See also Bidwell v. Zoning Board of Adjustment,* 4 Pa. Commonwealth Ct. 327, 286 A.2d 471 (1972) (rezoning of tracts abutting the college campus to allow construction of a library and lecture hall was not invalid as spot zoning because rezoning merely extended an adjoining pre-existing zone where the college campus is located).[3] Accordingly, since Sharp has failed to prove that enactment of Ordinance No. 90–07 is procedurally defective or that it constitutes arbitrary and unreasonable spot zoning contrary to law, the order of the trial court is affirmed.

## ORDER

AND NOW, this 9th day of July, 1993, the order of the Court of Common Pleas of Delaware County dated June 4, 1991 is affirmed.

DOYLE, J., did not participate in the decision in this case.

---

3. Sharp's contention that the Tract was not the only suitable location to meet the University's need for on-campus housing is similarly rejected. This Court observed in *Langmaid Lane:*

> As stated by Robert S. Ryan in his treatise on zoning: '[T]hese claims have been singularly unsuccessful, for the courts cannot become involved in a general review of the wisdom of zoning boundaries without assuming almost the entire legislative function.' R.S. Ryan, Pennsylvania Zoning Law and Practice, § 3.4.7. at 73. While the supervisors might have made a better choice in location, the choice was theirs to make and the remedy for any such error is not with the courts, but rather the ballot box.

*Id.,* 77 Pa. Commonwealth Ct. at 58–59, 465 A.2d at 75.