## In re Appeal of Realen Valley Forge Greenes Associates

430

C.P. of Montgomery County, no. 99-16287.

*Marc B. Kaplin,* for Realen Valley.
*Alan E. Boroff,* for intervenor.
*Joseph J. McGrory Jr.,* for Upper Merion Township Zoning Hearing Board.
*Thomas D. Rees,* for [unknown].

FURBER and ALBRIGHT, *JJ.,* April 12, 2001—On November 13, 1997, Realen Valley Forge Greenes Associates filed a validity challenge pursuant to sections 909.1 and 916.1(a) of the Municipalities Planning Code, 53 P.S. §§10901.1 and 10916.1(a). This challenge asserts that the AG-agricultural district in Upper Merion Township, Montgomery County, is invalid spot zoning,

arbitrary and irrational legislation, and special legislation.

The Upper Merion Township zoning hearing board held hearings on 14 evenings, beginning February 4, 1998 and ending on June 15, 1999. On August 13, 1999, that board issued a decision, containing extensive findings of fact and conclusions of law, from which an appeal was taken to this court on September 9, 1999. We considered this appeal on the record made before the zoning hearing board and the briefs and arguments of counsel. On December 1, 2000, the undersigned entered an order affirming the Upper Merion Township zoning hearing board, in response to which Realen filed its appeal to the Commonwealth Court, thereby making necessary this opinion.

Realen asserts on appeal that, among other things, the decision of the board was not supported by substantial evidence. In its briefs submitted to this court, Realen emphasizes the testimony of its witnesses, and relies heavily on the testimony of John Rahenkamp, who is characterized as the township's witness.[1]

When the common pleas court does not take additional evidence, its scope of review and that of the Commonwealth Court are identical. The courts must determine whether the zoning hearing board's findings are supported by substantial evidence, and whether the board abused its discretion or committed an error of law. *Lower*

---

1. Mr. Rahenkamp, who had been retained by the township to analyze its agricultural regulations in 1984 and in connection with the present application, was called by Realen as a witness in its case. He was also presented as an expert on behalf of the township. (N.T. at 545, 679-81.)

*Allen Citizens Action Group Inc. v. Lower Allen Township Z.H.B.,* 93 Pa. Commw. 96, 500 A.2d 1253 (1985). In *Lower Allen,* the appellant, as does the appellant in this case, asserted that the court and board disregarded its overwhelming testimony. Although there, as here, an impressive amount of evidence and testimony was presented to the board by the challenger which is contrary to the board's findings, this does not mean that the board's findings are unsupported by substantial evidence. On the contrary, it is the board's function to weigh the testimony of the witnesses and assign it appropriate evidentiary weight. The board may reject even uncontradicted testimony, and does not abuse its discretion by choosing to believe the opinion of one expert over that of another. *Lower Allen* at 105, 500 A.2d at 1258. Its findings may be set aside only when there has been a capricious disregard of competent testimony, which is "a disbelief of testimony which someone of ordinary intelligence could not possibly challenge or entertain the slightest doubt as to its truth." *Lower Allen* at 105, 500 A.2d at 1258.

We reviewed the entire record in this matter and conclude that the board's comprehensive decision is supported by substantial evidence, and that there was no capricious disregard of competent evidence. Each finding of the board is supported by an accurate reference to the record, with the following facts cited in support of the board's decision.

Applicant Realen, a Pennsylvania general partnership, is the equitable owner of the premises, known as the Valley Forge Golf Club, with acknowledged standing (exhibit P-1) to seek a change in the zoning classifica-

tion of the subject property which is currently zoned AG-agricultural. (Exhibit P-3.)

The property in question consists of 135 1/2 acres located in the King of Prussia area of the township. It is completely surrounded by roads, namely, North Gulph Road, Guthrie Road, West DeKalb Pike, and North Warner Road; no public roads traverse it. Excluding the portion that lies within the lines of the rights-of-way, its net area is 125 acres. (N.T. 117, 218, 242-43, 294, 455, 1114, 1132; exhibits P-3A, P-13.) This land has been used as a golf course since the 1920s, prior to the enactment of the township's first zoning code in 1942. (N.T. 151, 217-18, 243, 472, 1571.) It has been zoned AG since that district was created in 1953. (N.T. 248-49, 458, 1123.) Prior to that time, it was zoned R1-residential. (N.T. 341.) The property is contiguous to two other properties zoned AG-agricultural, one of which is located to the north, and identified as the right-of-way for the Pennsylvania Turnpike's Valley Forge interchange, while the other is positioned to the southwest, contains a residence and is believed to be non-conforming in area and width. (N.T. 119-21; exhibit P-3A.)

Across North Gulph Road lies an area zoned SM-suburban metropolitan, within which district there is located a combination of restaurant, hotel and office uses. Beyond North Warner Road is found an area zoned C-2 commercial, containing a Home Depot store, a bank, a gas station and a convenience store, and, below DeKalb Pike, within an AR-administrative research district, are located a number of office buildings. To the west, as one crosses the boundary line of Upper Merion Township, Montgomery County into Tredyffrin Township, Chester

County, there are to be found three different zoning districts, consisting of an HO-hotel office district, a P-professional office district and the Glenhardie Condominium situate within the OA-office apartment district. (N.T. 124-26; exhibits P-3a, P-9.) Specifically, the surrounding properties are:

499 North Gulph Road, 0.776 acres, zoned SM, with a restaurant;

500 North Gulph Road, 5.32 acres, zoned SM, with an office building;

480 North Gulph Road, 10.07 acres, zoned SM, with a 265-room hotel and restaurant;

460 North Gulph Road, 5.84 acres, zoned SM, with an office building;

The Turnpike Toll Plaza, 7.33 acres, zoned AG;

200 North Warner Road, 7.25 acres, zoned C-2, with an office building;

990 DeKalb Pike, 12.2 acres, zoned C-2, with a home center and a bank;

1036 West DeKalb Pike, 0.661 acres, zoned C-2, with a gas station and mini market;

1030 Continental Drive, 2.68 acres, zoned AR, with an office building;

120 South Warner Road, 1.508 acres, zoned AR, with an office building;

1101 West DeKalb Pike, 1.648 acres, zoned AR, with an office building;

1111 West DeKalb Pike, 1.49 acres, zoned AR, with an office building;

1100 Drummers Lane (Tredyffrin Township), 10.43 acres, zoned HO, with a 150 room hotel;

1255 and 1265 Drummers Lane (Tredyffrin Township), 10 acres, zoned P, with two office buildings;

1275 Drummers Lane (Tredyffrin Township), 5.3 acres, zoned P, with an office building;

1285 Drummers Lane (Tredyffrin Township), 3.9 acres, zoned P, with an office building; and,

Glenhardie Condominiums (Tredyffrin Township), 81.5 acres, zoned OA, 449 residential condominium units and a golf course. (N.T. 130-50, 290; exhibit P-10.)

The assessed values of these properties run from three to 22 times the assessed value per acre of the subject premises which are commonly referred to as the Valley Forge Golf Club. (N.T. 153-54.) All of the aforementioned properties are separated from the golf course by public roads (N.T. 243) and none were ever used as a golf course or made a part of one. (N.T. 257.)

Those of the properties identified above, which are located in Upper Merion, were all, at one time, a part of the original AG district, consisting of 1773 acres plus the Valley Forge Park. (N.T. 343; exhibit P-16.) The township's 1959 comprehensive plan stated that the AG zone was established as a zone of then undeveloped land for which future uses could not be foreseen with sufficient assurance to make specific recommendations at that time. That plan explained that this area was to be held in reserve, pending further development or the implementation therein of a particular use that might be beneficial to the township. (N.T. 346; exhibit P-17.)

Over the years the AG district was reduced in size as components of it were rezoned. (N.T. 348.) On September 7, 1956, the township's planning consultant, John Rahenkamp, wrote a letter to the chairman of the town-

ship planning commission, stating that the AG district was created as an interim measure to protect the Valley Forge Park area, provide for a residential use, and delay sporadic "ribbon" development until a desirable use, "even though it were commercial," could be assured for the golf course and other adjacent open land.[2] (N.T. 349-50; exhibit P-18.)

As indicated above, since the date of its creation, portions of the AG district have been rezoned, many to commercial uses, reducing the district to its current parameters containing the golf course and the two other properties previously identified. The last such change or reduction in the district's size occurred in 1985. (N.T. 388-89) with the most significant revisions taking place between 1955 and 1960, when areas including the present Valley Forge Industrial Park, King of Prussia Mall, General Electric, Acme and Valley Forge Convention Center areas were rezoned. (N.T. 371-82, 458; exhibits 19A-D, 20.)

With respect to the golf course, which is the subject of this appeal, in 1967, the then owners of the property were rebuffed in their attempt to secure a partial rezoning of the premises. (N.T. 391-99; exhibits P-21, P-22, P-23, P-24.) From 1964 to 1970, the township took a number of steps, which never came to fruition, to acquire the property. (N.T. 409-23; exhibits P-25, P-26, P-27, P-28, P-29.)

---

2. Mr. Rahenkamp expressed the opinion that Realen was reading this letter out of context, and that the AG zoning should not be characterised as a holding zone because there were and are a variety of uses to which this property could be put, even though the property was not developed as anything other than a golf course. (N.T. 869-71.)

During 1982 and 1983, Acorn Development Corporation, a former equitable owner, made several unsuccessful attempts to secure a rezoning of the premises. (N.T. 426-29; exhibits P-30, P-31, P-32), though, as recently as 1997, the board of supervisors offered to purchase the property for $4,800,000. (N.T. 430; exhibit P-33.)

On August 17, 1987, the township's zoning ordinance was amended to add cluster overlay as a conditional use to the AG district, and on February 25, 1991, the ordinance was again amended to permit therein the operation of personal care facilities as a conditional use. (N.T. 1182.)

Realen presented two proposals for development of the subject property, one with a residential component that conforms with Tredyffrin Township's OA criteria (exhibit P-14B), and one with an office component that conforms with Upper Merion Township's C-2 criteria. (N.T. 299-319; exhibit P-14B.)

At the hearings conducted before the municipality's zoning hearing board, several of Realen's witnesses expressed the opinion that none of the uses specifically permitted in the AG district, either as of right, by special exception or conditional use, other than a golf course could be built on the premises because they either conflict with the township's comprehensive plan[3] or are oth-

---

3. Realen's witness, Charles L. Guttenplan, agreed that the zoning ordinance is the regulatory document that controls over the comprehensive plan, which contains goals and objectives, and further agreed that the municipalities planning code provides that if the zoning ordinance and comprehensive plan are inconsistent, the zoning ordinance prevails. (N.T. 224-25.) Realen's counsel stipulated that there have been zoning approvals and zoning changes inconsistent with the township's comprehensive plan. (N.T. 240.)

erwise inappropriate for the premises. (N.T. 154-75, 190-97, 232-34, 247-48, 501, 591-603.) The planner hired by the township to analyze the AG district in 1984, and for this application, expressed the opinion that single family detached dwellings are not a logical use for the site, and of the special exception uses, only three, educational, religious and philanthropic uses; laboratory uses; and golf course use could be located on the property feasibly.[4] (N.T. 551-53.)

Single family dwellings appear to be a viable use for the premises, although, perhaps not ideal, (N.T. 682, 780) while educational, religious and philanthropic uses are, certainly, appropriate activities to which the premises in question might subscribe, as evidenced by the Baptist Center which lies in close proximity to the golf course. (N.T. 683, 784.) Hospitals, convalescent homes and assisted living facilities are also permitted uses (N.T. 683-84, 784-85) capable of implementation upon the applicant's property. Such would also be the case with regard to laboratories, scientific, agricultural or industrial research uses, not to discount the fact that a 2.7-million square-foot facility could be built on this site.

---

4. Mr. Rahenkamp also concluded in 1984 that the existing golf course is a desirable use for the property which balances the preservation of open space while providing reasonable income to the landowner. (N.T. 563.) He also advised the township that it was in the public interest to allow some clustered office and hotel use on the premises, while preserving the golf course. (N.T. 566-67, 571.) By 1998, he had concluded that office space was no longer an appropriate use because of its contribution to traffic during peak hours, and that the golf course should be combined with uses that concentrate in the off-peak hours, such as a hotel, restaurant or expanded clubhouse. (N.T. 571-72.) He never suggested compromising the golf course. (N.T. 574.)

(N.T. 684, 689-91, 789-90, 1445-46, 1449.) Furthermore, the existing golf course use remains a practical application for the subject property, without discounting the commitment of the premises to a single family cluster use which, though perhaps not an ideal utilization of the land, might prove feasible when considering the recent ongoing increase in house prices and the premiums often paid for the dwindling stock of available housing lots. (N.T. 685.) Personal care facilities are also much in demand and represent the type of activity easily suited to a large site such as ones on which a 1250 unit complex could be developed. (N.T. 685, 691-92, 808-09, 1100-12, 1162-63.) Indeed, the parties stipulated that the existing golf course is a feasible use for the subject premises, the evidence indicating there are not presently enough golf courses in the area to meet the ever-rising demand necessitated by the rapidly increasing number of golfers. (N.T. 694, 763-64.)

The property here under review differs from surrounding parcels, not only because it supports a golf course, but also as a result of its significant elevation changes, abundant vegetation and size, which makes it considerably larger than the surrounding properties, which are, in comparison, relatively small. (N.T. 749-50, 761-62, 1114, 1122, 1141.) With its 135 acres of nearby vacant land, the subject property is identified as the fifth largest property situate within Upper Merion Township. (N.T. 749, 1115-17.) While an argument might be made that the existing AG zoning may not be the most optimal one in terms of its application to the Realen premises, the permitted uses which may be made of the ground are practical and reasonable.

Planners recognize that roads and property lines are principal features used to create zoning districts. (N.T. 1133-34, 1142.) A site's size can be a critical factor in whether it should be looked at as a separate zoning district. (N.T. 1141-42.) The fact that the property's longest single boundary line abuts another county is another reason to look at this site differently from adjoining properties. (N.T. 1143.)

Realen asserts that the court erred in determining that the present zoning of the premises did not constitute spot zoning, was not arbitrary and irrational, and was not unlawful special legislation. While the assignments of alleged error are based upon different concepts, Realen's assertions must fail for the same and/or similar reasons, which are hereinafter discussed.

AG-agricultural districts are established by article IV of the Upper Merion Township zoning ordinance of 1942, as amended, and section 165-10 thereof sets forth the use regulations applicable to properties located in that district, and providing that:

"A building may be erected, altered or used and a lot may be used or occupied for any of the following purposes and no other:

"(A) Single-family detached dwelling.

"(B) Conversion of single-family detached dwelling, subject to the provisions of article XXXI, §165-212, herein.

"(C) Agriculture,

"(D) Municipal uses . . .

"(E) Any of the following purposes when authorized as a special exception:

"(1) Educational, religious, philanthropic use, excluding correctional or penal institution.

"(2) Day camp.

"(3) Hospital, convalescent home, sanatorium.

"(4) Club, fraternity house or lodge, provided that the principal activity shall not be one which is customarily carried on as a business and provided that all services shall be for members and their guests only.

"(5) Passenger station for public transportation, telephone central office, other public utility use.

"(6) Radio and television transmitting station and towers, except those erected and operated by federally licensed amateur radio operators on land owned by them and occupied by them as their dwelling places, which stations and towers shall be considered as accessory uses on the same lot with and customarily incidental to a dwelling house under subsection G of this section . . .

"(7) Laboratory for scientific, agricultural or industrial research, provided that:

"(a) There is no greater emission of smoke, noise, dust, odor or other disturbance than that customarily permitted in any residential district.

"(b) All activities, other than parking, shall be conducted wholly within an enclosed building, including storage of materials.

"(c) No manufacturing shall be carried on, except that fabrication and testing of prototypes are permissible, subject to the other requirements hereof.

"(d) No building shall be erected or used which is nearer to the front or side lot lines than 200 feet; no parking shall be allowed nearer than 50 feet to said lot lines;

and the natural vegetation within the open space thus provided shall be maintained.

"(8) Community center, noncommercial park, athletic field, recreational use.

"(9) Golf course, excluding golf driving range and miniature golf course.

"(10) Riding academy.

"(11) Cemetery, provided that the parcel devoted to this use shall contain not less than five acres.

"(F) Signs, subject to the provisions of article XXVII, herein.

"(G) Accessory use on the same lot with and customarily incidental to any of the foregoing permitted uses.

"(H) Cluster development overlay as a conditional use in accordance with the provisions of article XIV, herein . . .

"(I) Personal care facility as a conditional use in accordance with section 165-219.1 . . . ."

The board found, and we agree, that the premises can be used for single-family detached dwellings under subsection A, the use permitted as of right. The board found, and we agree, that it can be used for the following uses authorized by special exception under subsection E: (1) educational, religious or philanthropic use, (3) hospital or convalescent home, (7) laboratory for scientific, agricultural or industrial research, and (9) golf course, its present use.[5] The property can also be developed for the

---

5. There was no evidence presented that the present golf course use is unprofitable, just that the land is worth less as a golf course than it would be if developed as Realen desires. The parties stipulated that the existing golf course is a feasible use. (N.T. at 692-93.)

two conditional uses authorized by the municipality's zoning ordinance, namely, as permitted under subsection H, and a personal care facility as prescribed under subsection I.

Realen's expert witnesses asserted, and its counsel argues, that these findings are not supported because the special exception and conditional use provisions of the zoning ordinance require that the proposed special exception or conditional use conform to the comprehensive plan. They argue that, since the township's comprehensive plan designates the AG district for open space and recreational use, that no special exception or conditional use would be granted. This argument is, however, legally untenable.

In *Schatz v. New Britain Township Zoning Hearing Board,* 141 Pa. Commw. 525, 596 A.2d 294 (1991), the owner of property in an institutional district sought a special exception for an inpatient drug and alcohol treatment facility which fit the definition of a licensed nursing or convalescent home. The township asserted that the special exception could not be granted because the proposed use did not comply with the comprehensive plan that designated the property as residential. The Commonwealth Court held that, notwithstanding the specific ordinance requirement that the special exception use comply with the comprehensive plan, that plan could not undermine or prohibit the grant of a use specifically authorized by special exception in the district. In *Levin v. Board of Supervisors of Benner Township,* 669 A.2d 1063 (Pa. Commw. 1995), *aff'd without opinion,* 547 Pa. 161, 689 A.2d 224 (1997), the court held that a use permitted by the ordinance as a conditional use is legislatively de-

termined to be compatible with the district. *Levin,* 669 A.2d at 1072.

In support of its challenge, Realen emphasizes the commercial and residential nature of the properties surrounding the land in question. As the board found, other than the adjoining Glenhardie Condominiums which occupy approximately 81.45 acres lying outside of Upper Merion in Tredyffrin Township, Chester County, the parcels surrounding the premises in question are considerably smaller, ranging from .661 acres to 12.2 acres. There simply is no authority for the proposition that adjacent properties lying within different zoning districts should be made to conform through a rezoning of the areas affected. As the Supreme Court recognized in *Tidewater Oil Company v. Poore,* 395 Pa. 89, 94, 149 A.2d 636, 638 (1959):

"To accept the [lower] court's reasoning would be to say that no municipality has the power to limit an encroaching imperilment. It would be to say that land contiguous to an industrial district, though zoned residential, must now also become industrial because of contiguity alone, and that, through a process of chain reaction, all residential land must eventually become industrial land." See also, *Township of Falls Appeal,* 75 Pa. Commw. 528, 462 A.2d 920 (1983), and *Guentter v. Borough of Lansdale,* 21 Pa. Commw. 287, 345 A.2d 306 (1975).

Spot zoning is the singling out of one lot or a single area for treatment different from that accorded to similar surrounding land, otherwise indistinguishable from it in character, for the economic benefit of the owner of that land or to his economic detriment. *Sharp v. Zoning Hear-*

*ing Board of Radnor Township,* 157 Pa. Commw. 50, 60, 628 A.2d 1223, 1228 (1993), *allocatur denied,* 536 Pa. 629, 637 A.2d 290 (1993), and cases cited. A zoning ordinance is presumed valid and constitutional, and the challenging party has the heavy burden of proving otherwise. If the validity of the ordinance is debatable, the legislative judgment is allowed to control. *Sharp* at 60, 628 A.2d at 1227-28.

The size of the property is one factor to be considered in determining whether there has been spot zoning. Others are the topography, location and characteristics of the land. However, the most important factor is whether the rezoned land is being treated unjustifiably different from similar surrounding land, thereby creating an island having no relevant difference from its neighboring properties. *Sharp* at 61, 628 A.2d at 1228.

This court has considered the cases cited by Realen holding that large parcels of land were unlawfully spot zoned; *Baker v. Chartiers Township Zoning Hearing Board,* 677 A.2d 1274 (Pa. Commw. 1996), *allocatur denied,* 547 Pa. 738, 690 A.2d 238 (1997); *Pace Resources Inc. v. Shrewsbury Township Planning Commission,* 89 Pa. Commw. 468, 492 A.2d 818 (1985); *Bench Appeal,* 28 Pa. Commw. 415, 368 A.2d 828 (1977). However, all those cases hold that the basis of whether property has been the subject of unlawful spot zoning (or special legislation, or arbitrary and capricious zoning), is whether zoning is reasonable in light of all the circumstances.

The Upper Merion Township zoning hearing board's conclusion to that effect is supported by substantial evidence, and is neither contrary to law nor an abuse of discretion. The large size of this property makes it suit-

able for many of the uses authorized in the AG-agricultural district, including those which the board found to be viable. In contrast, the substantially smaller size of the surrounding properties in the township make them unsuitable for those uses. Realen's property, which comprises most of the district, is the fifth largest tract of land in the township, and is substantially larger than several of the municipality's other zoning districts. The subject tract is completely surrounded, and not bisected, by roads. Although its topography is man-made, it is different from that of the surrounding properties. No case holds that topography must date to the last ice age to be a relevant zoning consideration.

Although the AG-agricultural district is considerably smaller due to rezoning than it was when created, such a rezoning does not make the Realen property the object of unlawful spot zoning. In *Springfield Township Appeal,* 81 Pa. Commw. 513, 474 A.2d 706 (1984), the owner of a 9.72 acre parcel asserted that his individual property, as well as the entire 60-acre S-U special use district within which his premises was located constituted unlawful spot zoning. The landowner's property was one of the few undeveloped parcels in the S-U district, and the zoning hearing board found, based on substantial evidence, that the ordinance in question was not confiscatory since it did not deprive him of a reasonable use of his property. In upholding the validity of the S-U district, the court noted its large size, and that the areas surrounding it were zoned both commercial and residential.

The AG-agricultural zoning of Realen's tract is valid and rational, since it permits a variety of uses which the subject premises should be utilized for, other than its

present use as a golf course. The fact that Realen's proposed development of the tract in question is not permitted, does not invalidate the zoning which is applicable to the premises merely because the owner might be otherwise deprived of the most lucrative and profitable use of his ground. *Kirk v. Zoning Hearing Board of Honey Brook Township,* 713 A.2d 1226, 1231 (Pa. Commw. 1998), *allocatur denied,* 558 Pa. 624, 737 A.2d 745 (1999); *Guentter v. Lansdale Borough,* 21 Pa. Commw. 287, 293, 345 A.2d 306, 310 (1975).

Realen asserts that the court, in its review of the record, ignored the statement of the chairman of the township supervisors that the AG district has been used by the township, and continues to be used to prevent the development of this property. It also argues that the AG zoning was merely a holding zone based upon statements contained within the planner's report supporting the creation of the AG district. Whatever the intent may have been, it is irrelevant because the ordinance creating the AG district is clear, and authorizes significant development which is, in fact, appropriate for the property in question.

The relevant principle of statutory construction, as it pertains to applicant's argument, as set forth at 1 Pa.C.S. §1921, is that the letter of the statute is to be followed when it is clear, and that its intent is to be considered only when the words are not explicit. In *Allegheny County Institution District v. Department of Public Welfare,* 668 A.2d 252, 257 n.13 (Pa. Commw. 1995), *allocatur denied,* 547 Pa. 757, 692 A.2d 567 (1997), the Commonwealth Court held that the testimony of a legislator about the purpose of a statute was properly excluded when the

statute was clear. Even if the testimony were relevant, it would not be binding because it would remain the opinion of but one of the legislators.

Even if the township's intent and purpose is as Realen asserts, it has not implemented that intent in its ordinance, particularly since the AG district does not require that the premises remain a golf course or other open space.

Finally, Realen asserts in its concise statement that this court erred in determining that its claims are barred by principles of res judicata or collateral estoppel. Although the board found those principles applicable, it, nevertheless, ruled on the merits of Realen's challenge. This court does not affirm the board on the issue of preclusion, recognizing that res judicata and collateral estoppel are to be applied sparingly in zoning matters. *Schubach v. Silver,* 461 Pa. 366, 376, 336 A.2d 328, 333 (1975). We further note that the board's decision and the township's brief cite no case that holds that the necessary identity of parties or privity exists when the party to be precluded is not in privity with the original or prior litigants. While proximity in time and exact identity of the application might result in a finding of privity in an appropriate case, this is not that case, and there is no necessity for us to extend issue preclusion doctrines to uphold the denial of Realen's challenge.

For the foregoing reasons, this court's order of December 1, 2000, upholding the decision of the zoning hearing board of Upper Merion Township, which denied Realen Valley Forge Greenes Associates' challenge to the validity of the Upper Merion Township zoning ordinance, pursuant to sections 909.1 and 916.1(a) of the Pennsylvania Municipalities Planning Code, should be affirmed.