# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: Brenda L. Strickler, | : | |
| An Incapacitated Person | : | No. 2651 C.D. 2015 |
| | : | Submitted: September 15, 2016 |
| Appeal of: Blackhawk Property | : | |
| Investors, LLC | : | |

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
HONORABLE JULIA K. HEARTHWAY, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                          **FILED: October 12, 2016**

In this matter involving a tax sale under the Real Estate Tax Sale Law (Tax Sale Law),[1] Blackhawk Property Investors, LLC (Purchaser), a Utah corporation, appeals from an order of the Court of Common Pleas of York County, Orphans' Court Division (trial court),[2] setting aside a tax upset sale. The trial court determined the York County Tax Claim Bureau (Bureau) failed to comply with the mandatory notice requirements of the Tax Sale Law by failing to make reasonable efforts under the circumstances of this case to discover the whereabouts of landowner Brenda L. Strickler (Owner), or her appointed guardian at that time, Gary L. Landis (First Guardian). Purchaser advances several arguments, asserting the trial court erred in setting aside the tax sale after it was confirmed and after Purchaser obtained a default judgment in a quiet title action. For the reasons that follow, we affirm.

---

[1] Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. §§5860.101-803.

[2] The Honorable John S. Kennedy presided.

# I. Background

Owner and her husband were the owners of a residential dwelling located at 3884 Hearthstone Court (Springettsbury Township), York, PA 17402. In November 2009, the trial court, Orphans' Court Division adjudicated Owner incapacitated. See Reproduced Record (R.R.) at 22a-27a. The trial court also appointed First Guardian as plenary guardian of Owner's person and estate. At the time of the adjudication, Owner was 68 years old and resided at the Pleasant Acres Nursing Home, 118 Pleasant Acres Road, York, PA. In 2010, Owner's husband died. This vested the entire title to the property in Owner. Thereafter, First Guardian failed to pay the 2012 county and township taxes. He also failed to pay the 2012-2013 school tax assessed on the property.

In September 2014, the Bureau sold Owner's property to Ralph Neely, a member of Purchaser, at a tax upset sale. Shortly thereafter, the Bureau filed a deed transferring the property to Purchaser. See R.R. at 176a-77a.

In January 2015, Purchaser commenced a quiet title action against Owner and her deceased husband. Purchaser served First Guardian with a copy of the complaint. When no answer was filed, Purchaser sent notice of default judgment in the quiet title action to First Guardian *at Owner's nursing home address*: 118 Pleasant Acres Road, York, PA, 17042. This was not First Guardian's address. Consequently, he did not receive the notice.

On March 4, 2015, Purchaser filed a motion for default judgment in the quiet title action against Owner and mailed a copy of the notice to First

Guardian *at Owner's nursing home address*.  First Guardian did not receive this document until March 10, 2015.  The same day, the trial court entered a default judgment against Owner.

Seven days later, First Guardian filed a motion to strike or open judgment.  First Guardian simultaneously filed a petition *nunc pro tunc* to set aside the tax sale.  Two days later, the trial court, upon consideration of the petition *nunc pro tunc*, entered a rule upon Purchaser and the Bureau to show cause why the tax sale should not be set aside.  The trial court also directed that an answer be filed within 20 days.  Thereafter, Purchaser filed an answer to First Guardian's petition to set aside the tax sale, and First Guardian filed an answer to Purchaser's quiet title action.

In April 2015, the trial court removed First Guardian as plenary guardian of Owner's person and estate.  The same day, the court appointed Emerald Guardian Services, LLC (Second Guardian) as the successor plenary guardian of Owner's person and estate.

On June 1, 2015, Second Guardian filed a voluntary substitution and entered an appearance on behalf of Owner.  The same day, all parties agreed to stipulations permitting Second Guardian to file, as a consolidated action: an amended petition to set aside the tax upset sale; an amended petition to strike or open the default judgment; and, an amended answer and new matter to Purchaser's complaint in the quiet title action.  On the same date, Second Guardian filed all the amended pleadings.

3

On June 2, 2015, Second Guardian filed a motion to consolidate and for an interdivisional transfer of the amended petition to set aside tax sale and the quiet title action to the trial court's Orphans' Court Division. All parties concurred in the motion, and the trial court entered a consolidation and transfer order.

On October 7, 2015, the trial court held an evidentiary hearing on the petition to set aside the upset sale. See R.R. at 948a-93a. At the beginning of the hearing, Purchaser requested that the trial court address the amended petition to open or strike the default judgment in the quiet title action prior to addressing the amended petition to set aside the tax sale. R.R. at 950a-55a. However, the trial court noted Purchaser never indicated to the court or Second Guardian at a status conference before the hearing that anything other than the petition to set aside the tax sale would be addressed. R.R. at 955a. Nonetheless, Purchaser indicated it was prepared to proceed on the petition to set aside the tax sale. Id.

Purchaser first called the Bureau's Supervisor, Vanessa Shive (Bureau Supervisor), as a witness. R.R. at 958a. She was responsible for scheduling the tax sale and for complying with the Tax Sale Law. R.R. at 959a. In August 2014, the Bureau sent notice of the tax sale to Owner by certified mail. R.R. at 969a. However, the postal authorities returned it to the Bureau unsigned and marked "return to sender." R.R. at 969a-70a. Of significance to our analysis, Bureau Supervisor further testified the Bureau took no action when the notice was returned unsigned. R.R. at 970a.

4

Bureau Supervisor also testified the Bureau posted Owner's property. R.R. at 970a. The person who posted the property determined it was not owner-occupied. Id.

Thereafter, the Bureau sent notice to Owner and her deceased husband by first class mail. R.R. at 971a. The first class mail did not come back. Id. The Bureau did not make any further efforts to determine Owner's whereabouts before the tax sale. Id.

Purchaser also called First Guardian as a witness. R.R. at 980a. However, First Guardian testified he was unaware that Owner's taxes were not paid or that the Bureau had posted the property for sale. R.R. at 983a.

In November 2015, the trial court issued an opinion and order setting aside the tax sale of Owner's property to Purchaser. In its decision, the trial court found the following facts:

> (1) [Bureau Supervisor], in her capacity as supervisor of the [Bureau], was responsible for scheduling and following the process based on the [Tax Sale Law].
>
> (2) A Notice of Intent to File Tax Claim was sent to [Owner and her deceased husband] on March 8, 2013.
>
> (3) A Tax Claim against Real Estate indicating [Owner and her deceased husband] as property owners was filed on April 17, 2013 in the York County Office of the Prothonotary.
>
> (4) A posting was made at 3884 Hearthstone Court, York, PA 17402 on or around July 11, 2014.

(5) The Notice of Sale was sent to [Owner and her deceased husband] via first class mail and certified mail on August 22, 2014.

(6) The Petition for Confirmation nisi showing advertisements in the York Newspaper Company and the York Legal Record was filed on October 7, 2014.

(7) An order of Court Confirmation nisi of Consolidated Return was signed on October 17, 2014 by the Honorable Judge Stephen P. Linebaugh.

(8) The tax sale was confirmed by the [Bureau] on November 10, 2014 and a deed was signed to [Purchaser] on November 10, 2014.

(9) The Deed was recorded in the York County Recorder of Deeds on December 1, 2014 naming [Purchaser] as grantee.

(10) John W. Stitt, Esq., having represented [Owner and her deceased husband] in the past, sent a letter dated January 22, 2015 to [Bureau Supervisor], indicating that [Owner] had been declared an Incapacitated Person in 2009 and that [her husband] predeceased [Owner] on June 27, 2010, as evidenced by the filing of an information in the Office of the Register of Wills. The letter also asked for the remaining proceeds from the sale of [Owner's] former residence to be forwarded to [First Guardian], the then legal guardian of [Owner], for her continued care as a resident of Pleasant Acres nursing facility.

(11) [Bureau Supervisor] testified that a notice of sale was sent to [Owner] via certified mail on August 22, 2014 and the certification was returned to the tax collection office as 'return to sender.'

(12) After receiving the returned certification, [Bureau Supervisor] testified that the tax collection office did not take any action.

6

(13) [Bureau Supervisor] testified that personal service was made on [Owner] pursuant to [Section 613 of the Tax Sale Law, 72 P.S. §5860.613,] via the posting at the residence. The posting also determined that the residence was not owner occupied.

(14) [Bureau Supervisor] testified that since the first class mailing did not come back to the tax collection office, no other reasonable efforts were made by the tax collection office to determine the owners of the property.

(15) [Bureau Supervisor] testified that the certified mailing came back unsigned and that the tax collection office did not undertake any other actions until the tax sale took place.

(16) [First Guardian] testified that he did not have actual notice of the tax sale.

Tr. Ct., Slip Op., 11/23/15, at 2-3; R.R. at 850a-51a.

In its analysis, the trial court first noted that due process requirements demand strict compliance with the Tax Sale Law. Geier v. Tax Claim Bureau of Schuykill County, 588 A.2d 480 (Pa. 1991). Further, the trial court observed, the essence of Geier and Tracy v. Chester County Tax Claim Bureau, 489 A.2d 1334 (Pa. 1985), is that due process also requires that taxing bureaus in the Commonwealth conduct reasonable investigations to ascertain the identity and whereabouts of the latest owners of record of property subject to an upset sale for purposes of providing notice to them. However, a taxing bureau's duty to investigate such matters is limited to determining the owners of record and then to use ordinary common sense business practices to ascertain the proper addresses where notice of the tax sale may be given. Farro v. Tax Claim Bureau of Monroe County, 704 A.2d 1137 (Pa. Cmwlth. 1997).

7

Nonetheless, the trial court continued, <u>Geier</u> and <u>Tracy</u> require a taxing bureau to go beyond the mere ceremonial act of notice by certified mail where such notice is obviously ineffective in reaching the owner of record. To that end, Section 607.1(a)[3] (additional notification efforts), 72 P.S. §5860.607a(a), provides:

> (a) When any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to <u>any owner</u>, mortgagee, lienholder <u>or other person or entity whose property interests are likely to be significantly affected by such tax sale, and such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee or is not returned or acknowledged at all, then, before the tax sale can be conducted or confirmed, the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him.</u> The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county's tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

In the present case, the court observed, the Bureau did not receive a signed certified mail receipt with Owner's signature. Therefore, Section 607.1(a)

---

[3] Added by the Act of July 3, 1986, P.L. 351.

8

of the Tax Sale Law required the Bureau to exercise reasonable efforts to discover Owner's whereabouts and notify her of the pending tax sale. Geier; Tracy. At hearing, Bureau Supervisor testified the certified mail notice was returned to the Bureau's office unsigned and marked "return to sender." Tr. Ct., Slip. Op., at 5-6. Upon return of the certified mail, the Bureau sent out notice by first class mail. Id. This notice did not come back to the Bureau as undeliverable. Id. Bureau Supervisor testified the Bureau took no further action to discover the whereabouts of Owner or First Guardian. Id. at 6.

Based on Bureau Supervisor's testimony, the trial court determined the Bureau failed to make reasonable efforts to locate Owner as prescribed by Section 607.1(a) of the Tax Sale Law. For example, the Bureau did not inquire as to any alternate address for Owner or her deceased husband or check the dockets and indices of the County's tax assessment offices, recorder of deeds, or prothonotary's office.

In particular, the trial court noted, if the Bureau would have contacted Fran Surdich, the current tax collector for Springettsbury Township, it would have discovered the 2013-2014 school tax bill addressed to Owner was sent to First Guardian's address at: P.O. Box 732, York, PA 17404. Tr. Ct., Slip Op., at 6-7. In addition, the Bureau could have discovered that the prior tax collector, Margaret E. Cousler, sent the 2011 tax bill for Springettsbury Township to First Guardian's post office box address. Tr. Ct., Slip. Op., at 7.

Also, if the Bureau would have checked its own records it would have discovered that in June 2013 it received checks from First Guardian in the amount of $3,116.31 for payment of Owner's 2011 County taxes and $2,116.30 for Owner's 2011-2012 school taxes. Tr. Ct., Slip. Op., at 7.

Citing <u>Maya v. County of Erie Tax Claim Bureau</u>, 59 A.3d 50 (Pa. Cmwlth. 2013), the trial court reasoned that a taxing bureau's attempts at making additional notification were insufficient under Section 607.1(a) where the search failed to discover an alternative address in the county that the taxpayer used for other filings, and the bureau failed to use other search resources, including an internet search. The trial court also observed that additional notification efforts are required under Section 607.1(a) where, as here, certified mail notifications were returned without the required receipt, the bureau failed to make personal service on any owner, and where none of the notices were acknowledged in any respect. <u>In re 1999 Upset Sale of Real Estate</u>, 811 A.2d 85 (Pa. Cmwlth. 2002).

Finally, the trial court recognized that an upset sale may be valid, even where the taxing authority failed to comply will all statutory notice requirements. <u>Sabbeth v. Tax Claim Bureau of Fulton Cnty</u>., 714 A.2d 514 (Pa. Cmwlth. 1998). Here, however, the trial court determined the record did not show First Guardian had actual notice of the tax sale. Consequently, the trial court found, the Bureau's failure to comply with Section 607.1(a) was not cured by actual notice.

Accordingly, the trial court granted Second Guardian's amended petition to set aside the tax sale and declared void the September 2014 tax upset sale of Owner's property. Purchaser appeals.

## II. Issues

On appeal,[4] Purchaser presents the following issues. First, Purchaser contends the trial court erred by not adjudicating Second Guardian's amended petition to open or strike the default judgment prior to considering the amended petition to set aside the sale. Second, Purchaser asserts the trial court erred by not requiring Owner or her guardian to prove Owner was excused from the statutory requirements in Section 607 of the Tax Sale Law, 72 P.S. §5860.607, pertaining to the filing of objections and exceptions within 30 days of confirmation nisi. To that end, Purchaser argues the trial court erred by disregarding the confirmation of the sale. Purchaser also argues the trial court erred where the court concluded that First Guardian was at fault for not paying the property taxes.

Also before this Court is First Guardian's request that we direct the Prothonotary to indicate on the docket that he is not a party to the appeal. First Guardian asserts he is no longer a party to this case because the trial court removed him from the case and appointed Second Guardian, which voluntarily substituted itself as Plaintiff in the petition to set aside the tax sale and as Defendant in the quiet title action.

_____

[4] In tax sale cases, our review is limited to determining whether the trial court abused its discretion, rendered a decision without supporting evidence, or clearly erred as a matter of law. Husak v. Fayette County Tax Claim Bureau, 61 A.3d 302 (Pa. Cmwlth. 2013).

11

First Guardian also requests an award of costs and counsel fees pursuant to Pa. R.A.P. 2744 where Purchaser joined or kept First Guardian as a defendant even though Purchaser knew he was removed from the case.

## III. Discussion
### A. Petition to Open or Strike Default Judgment
### 1. Argument

Purchaser first contends the trial court erred by not adjudicating Second Guardian's amended petition to open or strike default judgment in the quiet title action prior to considering the amended petition to set aside. At the October 2015 hearing before the trial court, Purchaser took the position that the court could not address the pending petition to set aside the tax sale without first addressing the amended petition to open or strike the default judgment in the quiet title action, which established Purchaser's title to the subject property. See R.R. at 950a-54a.

Purchaser asserts a default judgment may only be opened if the moving party can show (1) it promptly filed a petition to open the default judgement, (2) it provided a reasonable excuse or explanation for failing to file a responsive pleading, and (3) it pled a meritorious defense to the allegations contained in the complaint. McFarland v. Whitman, 544 A.2d 929 (Pa. 1988).

Purchaser argues Owner, through First Guardian, never provided an excuse for failing to file a responsive pleading. Purchaser also notes that First Guardian demanded that excess tax sale monies be released following the sale. Because First Guardian's legal counsel filed this demand, Purchaser asserts any

claim of confusion must be rejected. Thus, Purchaser asserts the trial court erred in not addressing the petition to open the default judgment prior to considering the petition to set aside the tax sale.

## 2. Analysis

In <u>Husak v. Fayette County Tax Claim Bureau</u>, 61 A.3d 302 (Pa. Cmwlth. 2013), we determined that a quiet title action had no preclusive effect on the owners where they were not a party to the quiet title action. Here, in January 2015, following the tax sale, Purchaser filed a quiet title action against Owner at her vacant residential address, the subject property. In February 2015, the trial court mailed to Owner's vacant residential address an order requiring that Owner file a case management plan. This order was returned as undeliverable as addressed. Notice of intent to enter a default judgment, dated February 18, 2015, directed to First Guardian, was mailed to Owner's nursing home address, not First Guardian's business or residence address. On March 10, 2015, the trial court mailed notice of entry of default judgment to First Guardian at Owner's nursing home address. R.R. at 204a.

On March 17, 2005, seven days after entry of the default judgment, First Guardian filed a motion to strike or open the default judgment. R.R. at 214a-19a. In his motion, First Guardian alleged he did not receive adequate notice of the intent to enter default judgment. Mot. to Strike at ¶6; R.R. at 217-18a. First Guardian also indicated Owner was an incapacitated person and her husband was deceased. Mot. to Strike at ¶¶9-10; R.R. at 218a. On the same day, First Guardian filed a petition *nunc pro tunc* to set aside the tax sale.

13

As noted above, in June 2015 Second Guardian filed amended petitions to open or strike the default judgment in the quiet title action and to set aside the tax sale. These petitions raised fundamental due process challenges involving notice to Owner and First Guardian. These petitions were consolidated for hearing. At the October 2015 hearing, the trial court questioned Purchaser as to why it could not address the petition to set aside the tax sale prior to motion to open the default judgment. R.R. at 954a. Notably, at the end of the hearing, the trial court advised the parties that it would review the entire matter and determine whether additional testimony was needed to resolve the motion to open the default judgment. See R.R. at 987a-88a. Purchaser did not object. Thereafter, in its Pa. R.A.P. 1925(a) opinion, the trial court noted there is no procedural rule requiring that a motion to open a default judgment must be determined prior to a petition to set aside a tax sale. See Supplemental Reproduced Record (S.R.R. Emerald Guardian Services); at 12c-13c.

Further, we note that strict compliance with the mandatory notice provisions of the Tax Sale Law is essential in every tax sale. Tracy; Murphy v. Monroe Cnty. Tax Claim Bureau, 784 A.2d 878 (Pa. Cmwlth. 2001). The purpose of the Tax Sale Law is not to strip an owner of his property, but to ensure the tax is collected. Tracy; Murphy. In addition, Section 607(g) provides that if objections and exceptions are not filed to confirmation nisi and the sale is confirmed absolutely, the proceedings of the Bureau may still be challenged "with respect to the giving of notice under the act …." 72 P.S. §5860.607(g) (emphasis added).

14

We recognize that resolving the challenges to the default judgment would logically precede other relief; nevertheless, we perceive no prejudice to the parties by the manner in which the trial court resolved the underlying dispute. Given the fundamental due process issues at the heart of both the petition to open the default judgment and the petition to set aside the tax sale, we discern no reversible error or abuse of discretion by the trial court in granting the petition to set aside the tax sale without first expressly ruling on the motion to open the default judgment.

Further, we recognize that a petition to open or strike a default judgment must be filed within 10 days of the entry of judgment. Pa. R.C.P. No. 237.3. Here, First Guardian satisfied the first prong of McFarland by showing he promptly filed a petition to open the default judgment.

Regarding the second prong in McFarland, First Guardian established a reasonable explanation for failing to file a timely responsive pleading. Purchaser sent notice of the quiet title action and its notice of intent to take default judgment to First Guardian *at Owner's nursing home address*. This is not First Guardian's residential or business address. Where a defendant does not receive notice of a lawsuit against him, a reasonable explanation for his failure to respond is established. Brown v. Great Atlantic & Pacific Tea Co., 460 A.2d 773 (Pa. Super. 1983).

The third prong in McFarland requires that a party seeking to open a default judgment plead a meritorious defense to the allegations contained in the

15

complaint.  Here, First Guardian simultaneously filed a petition *nunc pro tunc* to set aside the tax sale with his petition to open the default judgment in the quiet title action.  First Guardian's petition to set aside the tax sale, based on the Bureau's failure to comply with the mandatory notice provisions of the Tax Sale Law, provided a meritorious defense to the allegations in Purchaser's quiet title action.

As such, First Guardian's petitions to open the default judgment satisfied the necessary requirements for opening or striking the default judgment. McFarland.  Therefore, we reject Purchaser's argument that the trial court's failure to first address the petition to open the default judgment constituted reversible error.

## B. Confirmation of Sale; Objections and Exceptions

### 1. Argument

Section 607 of the Tax Sale Law provides (with emphasis added):

(a) It shall be the duty of the bureau, not later than sixty (60) days after a sale was held, to make a consolidated return to the court of common pleas of the county, wherein it shall set forth, (1) a brief description of each property exposed to sale, (2) the name of the owner in whose name it was assessed, (3) the name of the owner at the time of the sale, and to whom notice by mail was given as provided by this act, (4) a reference to the record of the tax claim on which the sale was held, (5) the time when and the newspapers in which the advertisement for sale was made, with a copy of said advertisement, (6) the time of sale, (7) the name of the purchaser, if any, and (8) the price for which each property was sold ….  Within thirty (30) days of presentation of the consolidated return, if it shall appear to said court that such sale has been regularly conducted under the provisions of this act, the consolidated return and the sales so made shall be

16

confirmed nisi.  No consolidated return shall be made to the court until notice has been given to the owner under subsection (a.1)(1).

(a.1)(1) Notice shall be given by the bureau within thirty (30) days of the actual sale to each owner by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner at his last known post office address as determined in section 602(e)(2) that the property was sold and that the owner may file objections or exceptions with the court relating to the regularity and procedures followed during the sale no later than thirty (30) days after the court made confirmation nisi of the consolidated return.

* * * *

(b.1) If notice is given under subsection (a.1)(2), proof that notice under subsection a.1(1) was not received by the owner shall not defeat a sale nor invalidate title to property.  If the mailed or published notice under this section is defective or was served in an untimely manner, the court shall enter an order nunc pro tunc for cause, and, upon proof of prejudice, shall grant the owner leave to file objections and exceptions.

(c) In case no objections or exceptions are filed to any such sale within (30) days after the court has made a confirmation nisi, a decree of absolute confirmation shall be entered as of course by the prothonotary.

72 P.S. §5860.607(a)-(c).

In light of Section 607(b.1), Purchaser asserts it is Owner's burden to establish prejudice related to her untimely filing beyond the 30-day statutory requirement and the 30-day period begins to run when the sale is confirmed.  Here, the court confirmed the sale on October 7, 2014.  Purchaser asserts First Guardian became aware of the tax sale in December 2014 and was served with the quiet title

17

action in January 2015. In addition, Purchaser served First Guardian with a motion for default judgment in early March 2015. However, First Guardian waited until March 17, 2015, to file a petition *nunc pro tunc* to set aside the tax sale.

In short, Purchaser argues, a person wishing to challenge a tax sale may do so by (1) filing exceptions or objections within 30 days after the trial court issues a confirmation nisi or (2) by filing an action in equity or a civil proceeding. M.C. & E.K. Lees, Inc. v. Capenos, 119 A.3d 1092 (Pa. Cmwlth. 2015). Here, neither Owner nor her guardian filed exceptions or objections within 30 days of confirmation. Therefore, Purchaser urges, the trial court erred in setting aside the tax sale.

## 2. Analysis

The provisions of Section 607(b.1) of the Tax Sale Law, relied upon by Purchaser, apply to the notice that a tax sale has taken place, not to the pre-sale notices in Section 602 of the Law, 72 P.S. §5860.602. Nevertheless, Section 607(g) provides that if objections and exceptions are not filed to confirmation nisi and the sale is confirmed absolutely, the proceedings of the Bureau with respect to such tax sale shall not be challenged "except with respect to the giving of notice under the act …." 72 P.S. §5860.607(g) (emphasis added).

Section 602 of the Tax Sale Law (relating to notice prior to sale), provides in pertinent part (with emphasis added):

(a) At least thirty (30) days prior to any scheduled sale the [B]ureau shall give notice thereof, not less than once in two (2) newspapers of general circulation in the

18

county, if so many are published therein, and once in the legal journal if any, designated by the court for the publication of legal notices. Such notice shall set forth (1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, (5) the descriptions of the properties to be sold as stated in the claims entered and the name of the owner.

\* \* \* \*

(e) In addition to such publications, similar notice of the sale shall also be given by the [B]ureau as follows:

(1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this act.

(2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then at least ten days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, the tax collector for the taxing district making the return and the county office responsible for assessments and revisions of taxes. It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.

72 P.S. §5680.602(a), (e)(1), (e)(2).


The Bureau bears the burden of showing it complied with the specific requirements of Section 602 and the additional notification efforts of 607.1 of the Tax Sale Law. Rice v. Compro Distrib., Inc., 901 A.2d 570 (Pa. Cmwlth. 2006); McElvenny v. Bucks County Tax Claim Bureau, 804 A.2d 719 (Pa. Cmwlth.

19

2002). Here, the Bureau did not meet its burden of showing compliance with either Section 602 or Section 607.1.

First, Bureau Supervisor testified that the Bureau sent notice by certified mail to Owner at her residential address of 3884 Hearthstone Court, York, PA 17402. R.R. at 969a. The notice was returned to the Bureau unsigned and marked "return to sender." R.R. at 970a. Upon return of the unsigned notice, the Bureau did not, as required by Section 602(e)(2) of the Tax Sale Law, search for Owner's last known address by checking with the tax collector for the taxing district and the county office responsible for the assessments. See 72 P.S. §5860.602(e)(2).

Bureau Supervisor also testified that the Bureau posted the property. R.R. at 970a. However, the person who posted the property noticed it was not occupied. Id.

However, the Bureau did not inquire as to any alternate addresses for Owner. Tr. Ct., Slip Op., 11/23/15, at 6. If the Bureau would have contacted the current tax collector for Springettsbury Township, it would have discovered that the 2013-2014 school tax bill addressed to Owner was sent to First Guardian's address at: P.O. Box 732, York, PA 17404. Id. at 6-7. In addition, the Bureau could have also discovered that the Township's prior tax collector, sent the 2011 tax bill for Springettsbury Township to First Guardian's post office box address. Tr. Ct., Slip. Op., at 7.

20

In addition, the trial court observed, if the Bureau would have checked its own records it would have discovered that in June 2013 it received checks from First Guardian in the amount of $3,116.31 for payment of Owner's 2011 County taxes and $2,116.30 for Owner's 2011-2012 school taxes. Id. at 7. First Guardian made the payment with a cashier's check indicating his status as Owner's guardian. Id.

Second, Bureau Supervisor testified that other than mailing another notice first class to Owner and her deceased husband at the vacant property's address, which the postal authorities did not return to the Bureau, the Bureau took no further action to determine Owner's whereabouts. R.R. at 970a-71a.

Although the Bureau did send notice to the subject property by first class mail, which was not returned, this falls far short of the notice requirements of both Section 602(e)(2) and Section 607.1 of the Tax Sale Law. In particular, the Bureau knew the subject property was vacant, but it made no other efforts to determine Owner's whereabouts. Inquiries to the tax collector or even a check of its own records would have indicated that First Guardian was responsible for paying Owner's taxes.

As this Court explained in Maya, Section 607.1(a) of the Tax Sale Law provides that when any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner, and is either returned without the required receipted personal signature of the addressee, or under other circumstances raising a significant doubt as to the actual receipt by the addressee,

21

the bureau must make reasonable efforts to discover the whereabouts of the person or entity and notify him. 72 P.S. §6860.607(a)(a). Here, given the unsigned certified mail notice and the vacant property, the Bureau was required by Section 607.1(a) to conduct reasonable efforts to determine Owner's whereabouts. However, Bureau Supervisor clearly testified that the Bureau failed to do so. Consequently, the Bureau failed to comply with the statutory notice requirements of the Tax Sale Law. Tracy; Maya; Rice; McElvenny.

Third, where the taxing bureau fails to comply with the mandatory notice provisions of the Tax Sale Law, a tax sale may be set aside even after the sale is confirmed absolutely. Section 607(g) of the Tax Sale Law; Rice. Therefore, the trial court did not err in setting aside the tax sale based on the Bureau's failure to comply with the mandatory notice provisions of the Tax Sale Law regardless of the confirmation of the sale.

## C. First Guardian's Failure to Pay Taxes

### 1. Argument

Purchaser also contends the trial court erred in setting aside the tax sale because First Guardian rather than the Bureau, was at fault for failing to pay Owner's property taxes.

### 2. Analysis

We disagree. Although First Guardian may have been negligent in failing to pay Owner's 2012-2013 real estate taxes, the trial court found he had no actual knowledge of the tax sale. As discussed above, the Bureau is required to

strictly adhere to the mandatory notice provisions of the Tax Sale Law. <u>Rice</u>. The focus is not on the alleged neglect of the owner or her agent, which is often present in some degree; rather, the focus is on whether Bureau complied with the requirements of the statute. <u>See</u> <u>id.</u>

### D. First Guardian's Party Status

### 1. Argument

Also before the Court is First Guardian's request that we direct the Prothonotary to indicate on the docket that he is not a party to the appeal. First Guardian argues that where one party is substituted as the party in interest for another party, the other party is no longer a party to any further litigation. <u>Dep't of Educ. v. Empowerment Bd. of Control of Chester-Upland Sch. Dist.</u>, 938 A.2d 1000 (Pa. 2007). In April 2015, the trial court removed First Guardian and appointed Second Guardian as successor plenary guardian for Owner. R.R. at 419a. In June 2015, Second Guardian filed an amended petition to open the default judgment in the quiet title action, an amended answer to the quiet title action, and an amended petition to set aside the tax sale.

On June 12, 2015, Second Guardian filed a motion to consolidate the amended petition to open or strike the default judgment in the quiet title action and the amended petition to set aside the tax sale. The motion was granted and the amended petitions were transferred to the Orphan's Court Division. R.R. at 531a.

Because the trial court removed him as Owner's guardian, First Guardian argues he is no longer an extant party and thus he does not have party

23

status before this Court. Empowerment Bd. of Control. First Guardian further asserts Purchaser refused a request under Pa. R.A.P. 908 to notify this Court's prothonotary of its belief that First Guardian had no interest in the outcome of this appeal. See Appellee Landis' Br. at 13. In addition, First Guardian asserts Purchaser refused to discontinue the action against him under Pa. R.A.P. 1973. Id. Therefore, First Guardian asks the Court to direct our Prothonotary to indicate on the docket that he is no longer a party to the appeal.

## 2. Analysis

Pursuant to Pa. R.A.P. 1973(a), an appellant may discontinue an appeal as to less than all appellees if all parties stipulate to the discontinuance, or by leave of court upon application by the appellant.

In addition, pursuant to Pa. R.A.P. 908, an appellant may notify the prothonotary of the appellate court of its belief that one or more parties has no interest in the outcome of the appeal.

Here, the parties filed no stipulation, and Purchaser filed no application for discontinuance alleging First Guardian no longer had an interest in the case. Absent such a stipulation or motion for discontinuance, First Guardian will remain a named appellee in this case.

Regardless, we note that a party who no longer desires to be involved in the appeal may file a notice of non-participation. See Pa. Indep. Waste Haulers Ass'n, 885 A.2d 1106, 1107 n.1 (Pa. Cmwlth. 2005).

## E. Counsel Fees and Costs

### 1. Argument

First Guardian also contends he is entitled to counsel fees and costs under Pa. R.A.P. 2744 for a frivolous appeal on the ground that Purchaser's brief lacks legal support or citation to pertinent authority. <u>Venafro v. Dep't of Transp., Bureau of Driver Licensing</u>, 796 A.2d 384 (Pa. Cmwlth. 2002) (an appeal that raises an issue that is well-settled and presents no legal support is frivolous; a brief that lacks support for an argument and citation to pertinent authority is grounds to find appeal frivolous).

Here, First Guardian points out he requested that Purchaser discontinue the action against him under Pa. R.A.P. 908 and 1973, but Purchaser refused his requests. Rather, First Guardian asserts Purchaser's "joinder" was frivolous, obdurate and vexatious, thereby entitling him to counsel fees in the amount of $5,867.50, plus copying and service costs.

Pursuant to Pa. R.A.P. 906(a)(1), Purchaser responds, an appellant must serve all parties to the matter in the trial court, including parties previously dismissed pursuant to an interlocutory order, unless: (i) the interlocutory order of dismissal was reviewed by an appellate court and affirmed; or (ii) the interlocutory order of dismissal was made final under Pa. R.A.P. 341(c) and no party appealed from that date. Therefore, Purchaser argues this is not a joinder.

Purchaser also asserts First Guardian could have filed a notice of non-participation and would not have incurred the alleged counsel fees and costs.

## 2. Analysis

The imposition of counsel fees and costs under Rule 2744 is solely within this Court's discretion. Canal Side Care Manor, LLC v. Pa. Human Relations Comm'n, 30 A.3d 568 (Pa. Cmwlth. 2011). An appeal is frivolous if the realistic chances of success are slight and continuation of the contest is unreasonable. Waste Mgmt. v. Unemployment Comp. Bd. of Review, 651 A.2d 231 (Pa. Cmwlth. 1994). However, in awarding counsel fees, this Court is guided by the principle that an appeal is not frivolous merely because it lacks merit. Canal Side Care Manor. Rather, the appeal must have no basis in law or in fact. Id. Such a high standard is necessary to avoid discouraging parties from bringing appeals based on fear of being sanctioned. Id.

Here, although Purchaser's appeal lacks merit, we do not believe the appeal is frivolous so as to warrant the imposition of counsel fees under Pa. R.A.P. 2744. To that end, the trial court issued a confirmation nisi of the September 2014 tax sale. R.R. at 808a. First Guardian did not file objections or exceptions within 30 days of the confirmation nisi. As a result, the trial court confirmed the sale absolutely. Further, Purchaser attempted to quiet title to the property and obtained a default judgment in that action.

This Court describes a frivolous appeal as "one presenting no justiciable questions and so readily recognizable as devoid of merit on face of [the] record that there is little prospect that it can ever succeed," Appeal of Langmaid Lane Homeowners Ass'n, 465 A.2d 72, 75 (Pa. Cmwlth. 1983) (citation omitted), and "one in which no justiciable question has been presented and [the] appeal is

26

readily recognizable as devoid of merit in that there is little prospect that it will ever succeed." Erie v. Int'l Ass'n of Firefighters, Local 293, 522 A.2d 132 (Pa. Cmwlth. 1987) (citation omitted). A vexatious appeal is one instituted without reasonable cause. Dep't of Transp., Bureau of Driver Licensing v. Grubb, 618 A.2d 1152 (Pa. Cmwlth. 1992). Further, obdurate is defined as unyielding or stubborn. In re Padezanin, 937 A.2d 475 (Pa. Super. 2007). And, dilatory is defined as tending to cause delay. BLACK'S LAW DICTIONARY 488 (8th ed. 2004).

Given the totality of the circumstances in this case, including the confirmation of the tax sale without objection and Purchaser's efforts to quiet title after confirmation of the sale, we do not agree with First Guardian's assertions that Purchaser's appeal of the trial court's ultimate order setting aside the tax sale was frivolous, vexatious or brought simply to cause a delay. Therefore, we deny First Guardian's request for counsel fees and costs under Pa. R.A.P. 2744.

## IV. Conclusion

For the above reasons, we discern no error or abuse of discretion by the trial court in setting aside the September 2014 tax sale of Owner's property to Purchaser. Accordingly, we affirm.

ROBERT SIMPSON, Judge

27

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Brenda L. Strickler,       :
An Incapacitated Person       :   No. 2651 C.D. 2015
                                  :
Appeal of: Blackhawk Property   :
Investors, LLC                   :

# O R D E R

**AND NOW**, this 12th day of October, 2016, for the reasons stated in the foregoing opinion, the order of the Court of Common Pleas of York County, Orphan's Division, is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge