509 A.2d 1342

In Re: Appeal From Fayette County Ordinance No. 83-2 Amendment to the Zoning Ordinance of Fayette County, Pennsylvania and Issuance of Zoning Certificate No. 83-243 and Resolution No. 83-17, of the Fayette County Zoning Hearing Board. Robert Oravets, Caroline Oravets, Bruce Hayden and Beverly Hayden, Appellants.

Argued March 13, 1986, before Judges CRAIG and MACPHAIL, and Senior Judge BLATT, sitting as a panel of three.

*Richard F. Pohl,* for appellants.

*J. E. Ferens, Jr., Waggoner* & *Ferens,* for intervenors, Ivan Rider and Anna Faye Rider, his wife.

OPINION BY JUDGE MACPHAIL, May 13, 1986:

Appellants[1] appeal here from an order of the Court of Common Pleas of Fayette County which affirmed the decision of the Fayette County Zoning Hearing Board (Board) and held that certain property belonging to Ivan and Anna Faye Rider (Rider) was not improperly zoned. We reverse.

Rider filed a petition to reclassify approximately 6 acres of land zoned R-2 Residential located in the Borough of Smithfield, Georges Township along Route 119.[2] The petition requested that the land be zoned M-2 Heavy Industrial to permit the repair of mining cars and similar equipment. The Fayette County Planning Commission recommended that the Rider petition be granted, certifying that the rezoning conformed to the applicable provisions of the Comprehensive Development Plan for Fayette County, Volume I, April 1968 (Plan). After holding a public hearing, the County Commissioners (Commissioners) granted the petition and enacted amending Ordinance No. 83-2 of the Zoning Ordinance of Fayette County (Ordinance), rezoning the Rider property to M-2 Heavy Industrial.[3]

---

[1] Appellants are Robert Oravets, Caroline Oravets, Bruce Hayden and Beverly Hayden.

[2] It is not clear from the record exactly where the subject property is located because none of the relevant zoning district maps were admitted into evidence.

[3] Rider's petition identified only 6 acres of land to be rezoned. It appears from the record that an additional 5.8 acres belonging to one of the Rider sons was also to be rezoned, although that 5.8 acres was *not* made a part of the Rider petition. Section 703.3 of the

Appellants, Rider's aggrieved residential neighbors, appealed the Commissioners' decision to the Board.[4] After a hearing, the Board upheld the ordinance. Appellants then appealed to the court of common pleas. That court, without taking additional evidence, determined that Appellants had not sustained their burden of proving Ordinance No. 83-2's invalidity. The instant appeal followed.

Preliminarily, we note that where the court of common pleas has taken no additional evidence, our scope of review is limited to a determination of whether the Commissioners abused their discretion or committed an error of law in enacting the ordinance. *Pace Resources, Inc. v. Shrewsbury Township Planning Commission*, 89 Pa. Commonwealth Ct. 468, 492 A.2d 818 (1985).

The narrow issue presented for our consideration is, as it was for the court below, whether the rezoning of the Riders' 6 acres constituted illegal spot zoning. Spot zoning has been defined as "[a] singling out of one lot or

Ordinance provides that "[a]n application for a change of a district to a 'B-2', 'M-1' or 'M-2' district shall contain a minimum area or [sic] ten (10) acres. The area, should more than one parcel of land be involved, shall be contiguous exclusive of any streets or easements." We are unable to determine if the description contained in Ordinance No. 83-2 references the 6 acres or the 11.8 acres. However, inasmuch as the issue of whether the Rider petition complied with Section 703.3 of the Ordinance was not raised or considered by the Board, it is waived. *See Hersh v. Zoning Hearing Board of Marlborough Township*, 90 Pa. Commonwealth Ct. 15, 493 A.2d 807 (1985) (issues not raised before Board cannot be considered on appeal).

[4] Appellants properly appealed from the issuance of zoning certificate No. 83-243 permitting the Rider's to use the aformentioned property as a steel-machine repair shop. *See Pheasant Run Civic Organization Appeal*, 60 Pa. Commonwealth Ct. 216, 430 A.2d 1231 (1981).

a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment." *Mulac Appeal*, 418 Pa. 207, 210, 210 A.2d 275, 277 (1965), quoting *Putney v. Abington Township*, 176 Pa. Superior Ct. 463, 474, 108 A.2d 134, 140 (1954). "[T]he size of the property involved is only one of the determining factors. What is most determinative is whether the parcel in question is being singled out for treatment unjustifiably differing from that of similar surrounding land, thereby creating an 'island' having no relevant differences from its neighbors." *Mulac Appeal*, 418 Pa. at 210, 210 A.2d at 277. Relevant factors to be considered are the physical aspect and character of the land, how the rezoning affects the public health, safety, morals and general welfare of the community, and how the rezoning relates to the applicable comprehensive plan. *Schubach v. Silver*, 461 Pa. 366, 382-83 n. 14, 336 A.2d 328, 336 n. 14 (1975).

Article I of the Ordinance, entitled "Preliminary Provisions", provides:

Section 106. Statement of Community Development Objectives:

The Comprehensive Development Plan for Fayette County, including the chapters entitled Fayette County's Changing Population, The Economy of Fayette County, Land Use and Zoning, Transportation Planning, School Planning, Park and Recreation Planning and Housing, is hereby referenced as Fayette County's Statement of Community Development Objectives. These objectives include but are not limited to the following:

(a) Promote the proper distribution of population so as to make the most efficient use of existing community facilities and utility

services and to preclude the necessity of extending utility services and installing community facilities in areas where the cost of such extensions and installations is prohibitive.

(b) *Create living areas and business and industrial districts which are free of incompatible uses.*

(c) Clearly define the urban and rural sections of the County recognizing different types of land uses and intensities of development which are appropriate depending upon existing land use patterns, topography, accessibility and the existence of or potential for utilities and community facilities.

(d) Protect the environment of the County by giving special attention to preserving and promoting the County's natural assets—woodlands, streams and rivers and steep slopes.

(e) Protect the traffic carrying capacity of principal and minor arterial highways by controlling the type and intensity of use of private land along such highways.

(f) Promote the rehabilitation and proper reuse of scarred and misused land and rehabilitation of demolition of deteriorating or dilapidated structures. (Emphasis added.)

Section 106 of the Ordinance. The Ordinance specifically references the Plan as its statement of community objectives. *See* Section 606 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 85, *as amended,* 53 P.S. §10606. Although comprehensive plans are not binding upon later actions regarding the enactment or amendment of a zoning ordinance, *see Langmaid Lane Homeowners Association Appeal,* 77 Pa. Commonwealth Ct. 53, 465 A.2d 72 (1983); *Todrin*

*v. Board of Supervisors of Charles Township,* 27 Pa. Commonwealth Ct. 583, 367 A.2d 332 (1976), the zoning entered into must conform to the provisions outlined in the Ordinance, the purpose of which must be related to the community's interest. These interests are identified here in the Plan. *See* Section 604(1) of the MPC, *as amended,* 53 P.S. §10604(1).

Article III of the Ordinance establishes specific zoning districts designating the uses to which that land can legally be used:

> R-2—Residential: for medium density residential development including mobile homes. All community services can be provided, includes land with little or no major topographical problems.
>
> . . . .
>
> M-2—Heavy Industrial: Areas which have desirable access to community services and/or transportation and *which, because of the nature of the uses, should not be located in close proximity to communities.*

Sections 301.2 and 301.4 of the Ordinance (emphasis added). It can thus be inferred from the Ordinance that residential uses and industrial uses are incompatible with each other. Because Ordinance No. 83-2 creates an M-2 Heavy Industrial zone which is located in close proximity to R-2 Residential districts, Appellants contend that Ordinance No. 83-2 is unconstitutional.

"When considering the constitutionality of an ordinance, a court must begin with the premise that the ordinance is valid and constitutional." *Hebeisen v. Zoning Board of Adjustment,* 2 Pa. Commonwealth Ct. 331, 334, 277 A.2d 832, 833 (1971). "[B]efore a court may declare a zoning ordinance unconstitutional, the challenging party must clearly establish the provisions are arbitrary and unreasonable and have no relation to the

public health, safety, morals, and general welfare and if the validity is debatable the legislative judgment is allowed to control." *Schubach*, 461 Pa. at 381, 336 A.2d at 335. The trial court here held that Appellants did not carry their burden, observing that:

> while there are residences in the area of subject property, there are also property uses which are non-residential in nature. Thus immediately adjoining the subject property is property upon which another landowner operates an equipment repair business as a non-conforming use. Such activity, if not a non-conforming use, would be permitted only in an M-2 area as defined by the Fayette County Zoning Ordinance. Additionally, another M-2 zone exists on the opposite side of U.S. Route 119 from the subject premises of [Rider].

Opinion dated April 1, 1985, at 2-3. The court concluded that there has been no showing of unjustified differential treatment of the Rider property. We respectfully disagree.

The record in the instant case establishes the fact that the Rider property is surrounded by residential uses. The non-conforming uses existing in the R-2 district should not have been considered in the determination of whether the Rider property was the subject of spot zoning. Rejecting a similar argument advanced in *Mulac Appeal,* our Supreme Court stated:

> Appellees' argument that the rezoning was proper because the parcel is situated in an area of mixed commercial and residential uses is not persuasive. The area in which the subject premises is located is *zoned* residential. It is true that, within the confines of this large residential zone, certain commercial uses exist. All such commercial establishments exist, however, as

nonconforming uses and should such uses cease, the properties could be utilized only for residential purposes. . . . The amendatory ordinance creates a commercially zoned island in a residentially zoned sea and, unless a proper basis appears for such special treatment, cannot be sustained. (Citation omitted.) (Emphasis in original.)

418 Pa. at 211, 210 A.2d at 277. Likewise, the fact that property on the other side of Route 119 is zoned other than R-2 is of no consequence here because "[t]he line of demarcation must be fixed somewhere." *DiSanto v. Zoning Board of Adjustment,* 410 Pa. 331, 335, 189 A.2d 135, 137 (1963). Simply because a piece of property borders property zoned industrial does not mean it automatically can be rezoned industrial. *Schubach.*

There can be no question that the Rider property is being treated differently from the residential land surrounding it.

We now turn our inquiry to the issue of whether there exists a justification for such differential treatment. *Porter Appeal,* 28 Pa. Commonwealth Ct. 415, 368 A.2d 828 (1977). The Plan identifies the Rider property as best suited for medium and long range residential development. Our review of the record discloses no factors which would justify the rezoning. "[T]o promote the orderly development of a community the zoning authorities must be allowed to put a piece of property to the use which is most beneficial to the comprehensive plan, *i.e.,* establish a land use which best blends in with surrounding different uses." *Schubach,* 461 Pa. at 386, 336 A.2d at 338. In our opinion, the rezoning was not enacted to enhance the public's health, safety, morals and general welfare[5] but rather was enacted to accommodate the plans of one landowner. *Mulac Appeal. See* Section 604(1) of the MPC.

---

[5] Our review of the record reveals that Appellants testified extensively throughout the course of the hearings that the use of the

We hold that Ordinance No. 83-2 constitutes spot zoning and is therefore invalid. Accordingly, we reverse the order of the Court of Common Pleas of Fayette County.

ORDER

The order of the Court of Common Pleas of Fayette County, dated April 1, 1985, at No. 122 of 1984 G.D., is reversed.

---

Rider property as a mining car repair facility affected their health (one of the appellants was under the care of a physician for a heart condition) and how the constant noise prevented them from sleeping at night. Additional concerns expressed were related to their children and the increase in traffic and traffic safety. Neither the Board nor the trial court addressed these "health, safety,. moral and general welfare" issues.