Allen Distribution :
:
v. :
:
West Pennsboro Township :
Zoning Hearing Board :
:
v. :
:
Karl M. Smith, Mark Butler, :
and Betty Butler :
:
v. :
:
West Pennsboro Township, :
Alan D. Shover, William P. Bock, :
and Valerie A. Bock :
:
Appeal of: Allen Distribution, :
Alan D. Shover, William P. Bock : No. 524 C.D. 2019
and Valerie A. Bock : Argued: December 10, 2019


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE ELLEN CEISLER, Judge


OPINION
BY JUDGE FIZZANO CANNON          FILED: May 11, 2020


        Allen Distribution (Allen) appeals from the April 1, 2019 order of the
Court of Common Pleas of Cumberland County (trial court) affirming the decision
of the West Pennsboro Township (Township) Zoning Hearing Board (Board) that
concluded that Township Zoning Ordinances 2016-02 and 2016-04 (together,

Ordinances), which rezoned two parcels of land from High Density Residential (R-2) to Industrial (I) zoning, were invalid because they constitute spot zoning. Upon review, we affirm.

On March 21, 2016, Allen filed an application with the Township Board of Supervisors (Supervisors) seeking to have two tracts of land rezoned from High Density Residential (R-2) to Industrial (I). Board's Finding of Fact (F.F.) 2. Allen is the equitable owner of the tracts and intends to place industrial buildings referred to as cross dock facilities on the tracts. *See* F.F. 3, 7. One tract is known as 1617 Newville Road, Carlisle, Pennsylvania, and is owned by William P. Bock and Valerie Bock (together, Bock) and contains 70 acres (Bock tract); the other tract is known as 1525 Newville Road, Carlisle, Pennsylvania, and is owned by Allen D. Shover and contains 62.72 acres (Shover tract). F.F. 4. (The Bock and Shover tracts are collectively referred to as the Property). The Bock tract is located to the west of the Shover tract. F.F. 5. A total of 125 acres of the Property is situated in the Township with the remaining 8 acres of the Property located to the east in North Middleton Township. *See* F.F. 6.

Karl M. Smith (Smith) owns and resides at 1554 Newville Road, Carlisle, Pennsylvania, in the Township. F.F. 8. Mark Butler and Betty Butler (together, Butlers) own and reside at 1701 Newville Road, Carlisle, Pennsylvania, in the Township. F.F. 10 (Smith and Butlers are collectively referred to as Objectors).

Ultimately, after several public hearings on Allen's application, the Supervisors adopted Ordinance 2016-02 and, later, after additional hearings, also adopted Ordinance 2016-04. F.F. 19-20, 23, 25. Both Ordinances rezoned the

Property from High Density Residential (R-2) to Industrial (I) and are identical, except for their numbers. *See* F.F. 21, 25.

Thereafter, Objectors filed an Application for Substantive Challenge to the Validity of Ordinance Nos. 2016-02 and 2016-04.[1] F.F. 27. The Board held six hearings on the matter at which Allen and Objectors presented evidence, including expert testimony; the Board also received comments from the public. *See* F.F. 28, 30-32. The Supervisors did not participate in any of the hearings. F.F. 34.

Thereafter, the Board conducted a special meeting at which it rendered a unanimous verbal decision, concluding that the Ordinances were invalid. Later, on October 27, 2017, the Board issued its written decision on the matter. The Board concluded that Objectors sustained their burden to establish that the Ordinances "unjustifiably, arbitrarily, and unreasonably single out land for different treatment than from that accorded to similar surrounding land of the same character for the economic benefit of Allen" and, therefore, were invalid as spot zoning.[2] Board's Decision, IV, Conclusion. Allen then appealed to this Court.

Before this Court,[3] Allen argues that the trial court erred in affirming the Board's determination that the rezoning of the Property via the Ordinances

---

[1] The Ordinances were also challenged on procedural validity grounds. The trial court upheld the Ordinances, and on appeal, this Court affirmed. *See Smith & Butler v. Board of Supervisors of W. Pennsboro Twp. & Allen Distribution* (Pa. Cmwlth., No. 873 C.D. 2017, filed Dec. 19, 2018).

[2] The Board ruled that there was no basis to overturn the Ordinances based on Objectors' environmental rights argument. *See* Board's Decision at 7-8; IV, Conclusion. Although Objectors raise this argument before this Court, because of our disposition, it is not necessary for us to reach or discuss this argument.

[3] Where, as here, the trial court does not take additional evidence, our scope of review is limited to determining whether the Board committed an error of law or "a manifest abuse of discretion." *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 639 (Pa. 1983);

constituted spot zoning and, therefore, was invalid. Allen argues that zoning classifications are within the sound judgment of the legislative body, *i.e.*, the Supervisors, and should not be interfered with except in cases where it is obvious that the zoning classification has no substantial relation to the public health, safety, morals or general welfare. Allen further argues that a properly enacted zoning ordinance enjoys a presumption of constitutionality, and if the question of whether the rezoning was proper is debatable, a zoning hearing board must defer to the legislative judgment. Allen contends that Objectors have the burden of proving "beyond all doubt" that the Ordinances are unconstitutional. Allen's Brief at 17. Allen also points out that in 2007, the Township adopted the Western Cumberland County Joint Comprehensive Plan as the official Comprehensive Plan for the Township (Western Cumberland County Council of Governments (WCCOG) Plan or Township Comprehensive Plan) suggesting that the Property should be industrial. *Id.* at 22.

When faced with a substantive validity challenge to a zoning ordinance, we must presume the ordinance is "'constitutionally valid unless a challenging party shows that it is unreasonable, arbitrary, or not substantially related to the police power interest that the ordinance purports to serve.'" *In re Realen Valley Forge Greenes Assocs.*, 838 A.2d 718, 728 (Pa. 2003) (quoting *C & M Developers, Inc. v. Bedminster Twp. Zoning Hearing Bd.*, 820 A.2d 143, 150 (Pa. 2002)). Our Supreme Court has stated:

> an ordinance will be deemed to be arbitrary where it is shown that it results in disparate treatment of similar

*see also In re Realen Valley Forge Greenes Assocs.*, 838 A.2d 718, 727 (Pa. 2003). A zoning board abuses its discretion "only if its findings are not supported by substantial evidence." *Valley View Civic Ass'n*, 462 A.2d at 640. Further, when an appeal presents a question of law, such as the present case, our scope of review is plenary. *In re Realen*, 838 A.2d at 727.

landowners without a reasonable basis for disparate treatment. . . . Moreover in reviewing an ordinance to determine its validity, courts must generally employ a substantive due process inquiry, involving a balancing of landowners' rights against the public interest sought to be protected by an exercise of the police power. . . . [Z]oning ordinances may validly protect the interests of neighboring property owners from harm.

*Id.* "As regulations grounded in the delegated police power, zoning must accomplish an average reciprocity of advantage . . . by which all property owners in a designated area are placed under the same restrictions, not only for the benefit of the municipality as a whole but also for the common benefit of one another." *Id.* (internal quotation marks, citations and bracket omitted).

"'[S]pot zoning . . . is an arbitrary exercise of police powers that is prohibited by our Constitution.'" *In re Realen*, 838 A.2d at 729 (quoting *United Artists' Theater Circuit, Inc. v. City of Philadelphia*, 635 A.2d 612, 620 (Pa. 1993)). "Spot zoning is a singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit or detriment of the owner of that lot." *Takacs v. Indian Lake Borough Zoning Hearing Bd.*, 11 A.3d 587, 594 (Pa. Cmwlth. 2010) (citing *In re Realen*, 838 A.2d at 729). "In spot zoning, the legislative focus narrows to a single property and the costs and benefits to be balanced are those of particular property owners." *In re Realen*, 838 A.2d at 729. "The question is whether the lands at issue are a single, integrated unit and whether any difference in their zoning from that of adjoining properties can be justified with reference to the characteristics of the tract and its environs." *Id.* at 730; *see In re Mulac*, 210 A.2d 275, 277 (Pa. 1965).

"The most determinative factor in an analysis of spot zoning is whether the parcel in question is being treated unjustifiably different from similar

surrounding land, thus creating an 'island' having no relevant differences from its neighbors." *Takacs*, 11 A.3d at 594; *see also Schubach v. Silver*, 336 A.2d 328, 336 (Pa. 1975) (*Schubach II*) (quoting *Mulac*, 210 A.2d at 277). In other words, we must first determine whether property is being treated differently from the land surrounding it; if so, our inquiry then turns to the issue of whether there exists a justification for such differential treatment. *See In re Fayette Cty. Ordinance No. 83-2*, 509 A.2d 1342, 1346 (Pa. Cmwlth. 1986). "To establish improper spot zoning, the challenger must prove that the provisions at issue are arbitrary and unreasonable and have no relation to the public health, safety, morals and general welfare." *Takacs*, 11 A.3d at 594; *see DiMattio v. Millcreek Twp. Zoning Hearing Bd.*, 147 A.3d 969, 974 (Pa. Cmwlth. 2016) (stating burden falls on challenger to prove ordinance constitutes spot zoning). "If the validity of a zoning ordinance is debatable, it must be permitted to stand." *Takacs*, 11 A.3d at 594. "Spot zoning cases should be decided on the facts, guided by case law; there is no precise formula for determining whether a rezoning of property constitutes spot zoning." *Id.*

Here, the Board concluded that, although legal title remains in Bock and Shover, the Property is one integrated unit and the Supervisors clearly singled out Allen for the rezoning. Board's Decision at 10-11. Allen has entered into a contract to purchase the Bock and Shover tracts. F.F. 7. Additionally, the Board noted that when Allen filed its rezoning application, it simultaneously filed a Site Concept Plan showing industrial buildings. F.F. 2-3. The Board further noted that both tracts are included in the proposed use and there is no indication that the tracts will remain separate. Board's Decision at 10. Thus, we find no error or abuse of discretion in the Board's determination that the Property is a single integrated unit and Allen does not argue otherwise on this point.

6

The Board further found that the Property is being treated differently from the surrounding properties and that the Property is similar in character to the adjoining properties. *See* F.F. 47; Board's Decision at 15; IV, Conclusion. Notably, Allen does not challenge the Board's determination that the Property is being treated differently. Allen also does not directly challenge the Board's finding that the Property is similar in character to the adjoining properties. Nonetheless, Allen raises several arguments that, arguably, challenge the similarity between the adjoining properties and the Property and/or that serve as justification for the differing treatment between the adjoining properties and the Property. *See* Allen's Brief at 22-27. We will address those arguments.

Allen contends that the Board failed to address the Property's size in conjunction with the small size of adjacent properties. Allen's Brief at 27; *see id.* at 28-29 (arguing trial court erred by failing to point out that adjacent properties were very small in size and not similar to the rezoned property). Allen contends that the Property's size fits in with other industrial-zoned properties in the vicinity and, therefore, is not a "spot" in the overall zoning map of the vicinity. Allen's Brief at 27. Allen also contends that the industrial zoning of the Property blends in with the surrounding uses and that it was an abuse of discretion for the Board to ignore the proximity of the Property to the infrastructure development along the Allen Road Corridor. Allen's Brief at 24-25. Allen contends that there is about 28,000,000 square feet of warehouse facilities either in existence, under construction or approved and awaiting construction along the Allen Road Corridor. *Id.* at 25. Allen asserts that planning permits differences in zoning and the Board's finding that the industrial use is inconsistent and incompatible with surrounding residential uses "flies in the face of the residential uses immediately to the east of the Property in

7

North Middleton Township . . . that are immediately across the street from a large industrial warehouse complex." *Id.* at 25-26.

We acknowledge that courts typically find spot zoning with respect to small parcels. *See, e.g., Mulac* (1.04 acres); *DiMattio*, 147 A.3d at 971 (24 acres); *Fayette Cty.*, 509 A.2d 1342 (6 acres). However, that is not always the case. *See, e.g., In re Realen*, 838 A.2d at 730 (finding reverse spot zoning of 135-acre tract); *Baker v. Chartiers Twp.*, 641 A.2d 688 (Pa. Cmwlth. 1994) (finding spot zoning of 220-acre tract); *Appeal of Benech*, 368 A.2d 828 (Pa. Cmwlth. 1977) (finding spot zoning of 80-acre tract). Our Supreme Court has stated that the "size of the property is only one of the determining factors[,]" *Mulac*, 210 A.2d at 276, and that "the large size of [a] tract is not determinative." *In re Realen*, 838 A.2d at 730.

With respect to the Property and the surrounding uses, the Board made the following findings. The Property consists of a total of 125 acres in the Township, with the remaining 8 acres of the Property located to the east in North Middleton Township. F.F. 6. The southern boundary of the Property, from its southeast corner, follows Pennsylvania Route 641 in a westerly direction, then proceeds along residential property classified as R-2 in a northerly direction, then in a westerly direction to the rear of that and other residential properties zoned as R-2, then in a southerly direction back to Pennsylvania Route 641, then in a westerly direction. F.F. 35. The properties that front on Pennsylvania Route 641 to the south are residential properties. F.F. 36. Smith's property fronts on Pennsylvania Route 641 to the south. F.F. 9. Properties located immediately behind the properties that front on the south side of Pennsylvania Route 641 are also zoned R-2. F.F. 37. The properties adjacent to the western boundary of the Property as well as a narrow portion of the Property adjacent to the northwest boundary of the Property are zoned

8

R-2. F.F. 38. The R-2 zone continues to the west of the R-2 zoned properties that border the western side of the Property. F.F. 39. The Pennsylvania Turnpike borders the majority of the northern boundary of the Property except in the northwest corner where, as previously stated, the adjacent properties are zoned R-2. F.F. 40; s*ee* F.F. 38. The properties located to the north of the Pennsylvania Turnpike are zoned agricultural (A). F.F. 41. The properties to the east of the Property are located in North Middleton Township and zoned "neighborhood commercial" per that township's zoning ordinance.[4] F.F. 43. The properties adjacent to the Property located in North Middleton Township are residential in nature and bordered to the east by Meadowbrook Road. F.F. 44. The properties east of Meadowbrook Road are zoned industrial. F.F. 45. There are approximately 50 single-family homes adjacent to the Property. F.F. 51. Neither the Property nor the surrounding properties have access to the Pennsylvania Turnpike. F.F. 46.

In sum, properties zoned R-2 border the Property to the south and west and a portion of the northern boundary of the northwest corner. Board's Decision at 13. Land zoned agricultural is located north of the Pennsylvania Turnpike. *Id.* The entire eastern boundary borders North Middleton Township. *Id.* The Property is not surrounded by land located in the Township that is zoned less restrictively than the R-2 zone. F.F. 48. There are three zoning classifications, with the classifications being based on intensity of use, between Industrial, as the Property was rezoned, and

---

[4] The purpose of the neighborhood commercial district is "to provide basic convenience commercial goods and services to local residents. Uses have been limited to those that residents are likely to need on a daily or regular basis." North Middleton Zoning Ordinance § 204-18, R.R. at 676.

9

the surrounding R-2 districts.[5]  Further, the Board found that the rezoned Property is similar in character to the properties that surround it.  F.F. 47.  The Board based this

---

[5] The Zoning Ordinance designates the following zoning districts, ordered from least intensive to most intensive use:

a. (A) Agricultural
b. (R) Rural Residential
c. (R-1) Low Density Residential
d. (R-2) High Density Residential
e. (MHP) Manufactured Housing Park
f. (MU) Mixed Use
g. (C) Commercial
h. (I) Industrial
i. (Q) Quarry

Board's Decision at 12 (citing Township Zoning Ordinance 2008-01, as amended by Zoning Ordinance Amendment 2011-04 and 2016-03 § 109).

The purpose of the High Density Residential (R-2) zone is "to accommodate the higher density housing needs of the Township."  Township Zoning Ordinance § 203.1.  Permitted uses in the R-2 district are: (1) agriculture, excluding concentrated animal feeding operations (CAFOs) and concentrated animal operations (CAOs); (2) churches and church related residences; (3) forestry; (4) municipal services, parks and playgrounds and/or public utilities structures; (5) dwelling units that existed on the effective date of the ordinance; (6) accessory uses customarily incidental to the foregoing uses, including, but not limited to, family day-care facilities and no-impact home based businesses; and (7) cluster developments.  Township Zoning Ordinance § 203.2.

The purpose of the Industrial (I) zoning district is to "provide[] for a wide range of industrial activities that contribute to the well-being of the Township by diversifying its economy and providing valuable employment opportunities. . . .  This Zone provides for light industrial uses as permitted by right, but requires obtainment of a conditional use for heavier and potentially more-objectionable types of industrial uses."  Township Zoning Ordinance § 220.1.  Permitted uses in the I district are:  (1) all uses permitted of right in the commercial district, excluding CAFOs and CAOs; (2) laboratories for medical, scientific, or industrial research and development; (3) manufacturing, packaging, storage and/or wholesaling of the following: (a) furniture, cabinets, fixtures, office supplies, and other household appointments; (b) scientific, specialized and technical instruments and equipment; (c) audio visual components, computers, vending machines, electronic equipment and video games; (d) finished textile products; (e) brushes, brooms, and combs; (f) hot tubs, spas, saunas, and swimming pools; (g) jewelry, and other precious metals; (h) photographic, lighting, and timekeeping equipment; (i) small household appliances, excluding major appliances; (j) musical instruments and sporting equipment; (k) cosmetics, dyes, toiletries, and pharmaceuticals; (l) optical, dental, and medical supplies and equipment; and (m) small or novelty products from prepared materials; (4) processing, packaging, storage and/or wholesaling; (5) machine shop; (6) repair shops for products permitted to be manufactured in the I district; (7)

10

determination on the testimony of two of Objectors' expert witnesses as well as that of one of Allen's expert witnesses, Michelle Brummer, who admitted to the similarity as well. Board's Decision at 15; *see* Reproduced Record (R.R.) at 459-60.

With respect to Allen's contention that the Property's proximity to infrastructure and development along the Allen Road Corridor justifies the rezoning of the Property, our Supreme Court rejected a similar argument in *Schubach v. Zoning Board of Adjustment (Philadelphia)*, 270 A.2d 397 (Pa. 1970) (*Schubach I*). In *Schubach I*, the property owner argued that the rezoning represented an extension of a large commercially zoned area located a few hundred feet to the north of the rezoned property. The Supreme Court explained that acceptance of such an argument

> would mean that every borderline area in the [municipality] could be subjected to such down zoning. The extension of this reasoning could lead to one tract after another falling into the C—2 classification: since A is C—2, then B should be C—2; since B is C—2, then C should be C—2; since C, then D; and so on, ad infinitum.

*Schubach I*, 270 A.2d at 400; *see also Schubach II*, 336 A.2d at 338 (stating Court was not retreating from its view in *Schubach I* that "simply because a piece of property rests on the border of a commercial zone it automatically can be rezoned commercial"); *Fayette Cty.*, 509 A.2d at 1346 (finding spot zoning where land bordering property zoned industrial was rezoned from R-2 to M-2 Heavy Industrial and ruling that industrial uses on opposite side of state highway did not justify extending industrial zone into residential area; simply because "property borders

---

welding shops; (8) communication antennas that are co-located upon existing structures; (9) recycling collection facilities as an accessory use; and (10) restaurants and drive-thru restaurants. Township Zoning Ordinance § 220.2.

11

property zoned industrial does not mean it automatically can be rezoned industrial"). Moreover, we cannot attribute more significance to the use of more distant properties than those properties adjacent to the subject property. As Objectors argue, "[s]pot zoning would have nothing to do with a spot or an island if the use of non-adjacent properties was more relevant than the adjacent properties." Objectors' Brief at 20.

Nonetheless, Allen argues that the Property's rezoning is consistent with the Township Comprehensive Plan (i.e., WCCOG Plan) for the area. Allen's Brief at 22-23. Objectors, however, argue that the rezoning is only consistent with the Township Comprehensive Plan's map as it applies to the Property and not as it applies to that corner of the Township. Objectors' Brief at 31. Objectors point out that the WCCOG Plan identified all parcels between Newville Road and the Pennsylvania Turnpike as future industrial growth areas. Objectors' Brief at 31 (citing R.R. at 672). Objectors state that this designation included not only the Property that has been rezoned but also 11 residential properties along Newville Road and at least one additional parcel containing 21 acres immediately adjacent to the western boundary of the Bock property. *Id.* Objectors also state that Allen's plan depicts all 31 properties on the southern side of Newville Road as commercial, rather than R-2. Objectors assert that if the rezoning "resulted in a change to the designation [of] all of the properties in this corner of the [T]ownship consistent with the future land use map, then perhaps there would be a different result, but that has not occurred." *Id.* The Board, too, indicates that if the rezoning was on a larger scale to include adjoining properties, one could argue that it would be consistent with the entire map and text of the Township Comprehensive Plan. Board's Brief at 29-30.

12

The Board noted that although the *map* of the WCCOG Plan indicates that the Property is within a zone designated for future Industrial zoning, there are other adjoining properties that were also within the zone labeled as Industrial. Board's Decision at 16. Additionally, some adjoining properties which are zoned R-2 are designated as Commercial. Board's Decision at 16. The adjoining properties were not, however, rezoned. *See* Board's Decision at 17. As the Board argues, "the rezoning is consistent with the [WCCOG] [P]lan's map as it applies to Allen, but inconsistent with the surrounding properties." Board's Brief at 11. Although the rezoning of the Property may be consistent with the Township Comprehensive Plan's *map*, the fact that only the Property was rezoned and the adjoining properties were not rezoned consistent with the *map* supports the Board's determination that the map's significance is mitigated and, therefore, it is not determinative.

Additionally, the WCCOG map is not the entire plan. The WCCOG Plan contains the following text:

> In order to avoid the associated headaches brought by sudden large scale development and its proximity to other zoning districts, care must be taken to avoid negative impacts to the surrounding and prosperous residential, agricultural and conservation communities. As a separation of the business districts from the residential and rural districts is of significant concern, these non-residential zones would ideally be limited to strictly nonresidential development and include allowances for other non-business uses like schools, hospitals, government facilities, and churches. Serious consideration must also be given to the need for proper transition between uses as conflicts may arise in some circumstances between neighboring properties.

13

Board's Decision at 16 (citing WCCOG Plan, p. 119). The Board further noted that our Supreme Court upheld a rezoning, considering the comprehensive plan, where the evidence established that the rezoned property was a "transition zone" and represented the "best buffer." Board's Decision at 16 (discussing *Schubach II*, 336 at 338). In *Schubach II*, our Supreme Court stated:

> Instantly, we merely recognized that to promote the orderly development of a community the zoning authorities must be allowed to put a piece of property to the use which is most beneficial to the comprehensive plan, i.e., establish a land use which best blends in with surrounding different uses.

*Schubach II*, 336 A.2d at 338. As stated, there are three zoning classifications between Industrial, as the Property was rezoned, and the surrounding R-2 districts. We find no error or abuse of discretion in the Board's determination that the industrial zoning of the Property does not establish a land use that "best blends in with surrounding different uses." There are significant differences between the rezoned Property's designation of Industrial and the adjoining properties which are zoned R-2. *See supra* note 6.

Finally, the Board noted that the WCCOG Plan was adopted nearly 10 years ago and, therefore, should be reviewed pursuant to Section 301(c) of the Pennsylvania Municipalities Planning Code,[6] 53 P.S. § 10301(c), which requires a review of the comprehensive plan every 10 years. Board's Decision at 17. The Board noted that the Cumberland County Comprehensive Plan was adopted in 2011

---

[6] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202.

and that the Cumberland County Planning Commission stated that the rezoning was inconsistent with the County Comprehensive Plan.[7]  Board's Decision at 17.

Allen points out that the rezoning received favorable recommendations from other governing entities and is in accordance with the WCCOG Plan (i.e., the Township Comprehensive Plan).  Allen's Brief at 25.  Allen maintains that the Board simply disagreed with various governing entities who recommended the rezoning. *Id.* at 22.  Allen argues that this disagreement, coupled with the fact that Allen's and Objectors' expert witnesses had contrary views as to the rezoning's compatibility with the surrounding area, suggests that the issue is fairly debatable, and therefore, the Board's failure to defer to the Supervisor's legislative judgment to rezone the Property constituted an error of law and an abuse of discretion.  *Id.* at 22-23.

We note that the Board found that after Allen filed its Application for rezoning, the Supervisors referred the Application to the Cumberland County Planning Commission, the Township Planning Commission and the WCCOG for consideration.  F.F. 12.  As noted above, the Supervisors in 2007 adopted the WCCOG Plan as the official Comprehensive Plan for the Township.  F.F. 13.  The Cumberland County Planning Commission reviewed the Application and indicated that the rezoning was consistent with the WCCOG Plan but inconsistent with the County Comprehensive Plan.  F.F. 14-15.  The Cumberland County Planning Commission voted 4-2 to recommend the approval of the proposed rezoning.  F.F.

---

[7] Objectors point out that the County Plan depicts the rezoned area as residential in nature. Objectors' Brief at 36.  Objectors also point out that the Township adopted a new comprehensive zoning ordinance in 2011 and it was amended in 2016.  *Id.* at 37.  Objectors state that during that process, the Township did not attempt to modify the zoning designation of any land in this area of the Township.  *Id.*  Objectors also note that the County Plan includes North Middleton Township. Objectors point to testimony that prior to 2011, the area between the Township boundary and Meadowbrook Road had been included in North Middleton's industrial district.  *Id.* at 32 (citing R.R. at 240).  However, in 2011, the zoning of that area was changed to a Neighborhood Commercial district, and eight acres of the Property lies in this zoning district.  *Id.*

16. The Township's Planning Commission also reviewed the Application and voted to remain neutral. F.F. 17. A steering committee of the WCCOG reviewed the Application and voted unanimously to approve the rezoning. F.F. 18. There is no indication that the full WCCOG reviewed the Application. *See generally* Board's Decision.

Allen, however, fails to cite any authority to support its position that these recommendations make the issue of rezoning debatable. Indeed, our case law on spot zoning does not require unchecked deference to the legislative body when spot zoning is claimed. *See supra* pp. 5-6 (discussing what constitutes spot zoning). Consequently, we agree with the Board that simply because various government entities voted to recommend rezoning in conjunction with their review of the comprehensive plan(s), this is not determinative as to whether the issue constitutes spot zoning and, therefore, does not automatically render the issue "debatable." *See* Board's Decision at 17.

Lastly, the Board also concluded that the rezoning was for the economic benefit of Allen, as well as Bock and Shover, and that there was no direct testimony regarding the benefits to be gained by any other party, noting that the Supervisors did not participate in any of the hearing sessions. Board's Decision at 11. Allen does not challenge the Board's determination that the rezoning benefits Allen, Shover, and Bock; instead, Allen asserts that the Board acted arbitrarily and abused its discretion because the Board ignored factors that the Supervisors considered beneficial to the community. Allen's Brief at 23-24. Allen points to minutes of the Supervisor's public hearing held on June 27, 2016 to consider the rezoning request and notes Supervisor Barrick's statement regarding the construction jobs, facility

16

workers and tax revenues that would result. Allen's Brief at 23-24 (citing Exhibit L-10, R.R. at 694).

The Board, however, asserts that the owners of the surrounding properties receive no benefit. Board's Brief at 14. Both the Board and Objectors point to the fact that despite the Township Comprehensive Plan designating additional properties for industrial or commercial zoning, as discussed above, only the Property was rezoned. *See* Board's Brief at 29-30; Objectors' Brief at 31. They maintain that, as a result, the rezoning serves only Allen's interests and does not serve the planning goals of the Township. *Id.*

We agree with the Board's suggestion that a rezoning will create some benefit to persons other than the owner, such as construction work, employment, etc. Board's Brief at 15. However, as our Supreme Court stated, an ordinance cannot "singl[e] out [] one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot[,] as such constitutes invalid spot zoning." *Schubach II*, 336 A.2d at 336. Our Court has held that where zoning was enacted to accommodate the plans of one landowner and was not enacted to enhance the public's health, safety, morals and general welfare, there was no justification for the differential treatment of land and, therefore, the rezoning constituted spot zoning. *Fayette Cty.*, 509 A.2d at 1346. Our Supreme Court has stated:

> lawful zoning must be directed toward the community as a whole, concerned with the public interest generally, and justified by a balancing of community costs and benefits. These considerations have been summarized as requiring that zoning be in conformance with a comprehensive plan for the growth and development of the community.

17

*In Re Realen*, 838 A.2d 729.

As Objectors and the Board point out, despite the Township Comprehensive Plan designating numerous other properties both adjacent to and in the immediate vicinity of the Property for industrial zoning, only the Property was rezoned. Thus, although the rezoning is in conformance with the Township Comprehensive Plan with respect to the Property, the rezoning is not in conformance with the Township Comprehensive Plan *for the community*. As such, we cannot say that the Board erred in determining that the Property was singled out to benefit Allen to the exclusion of other properties.

Further, the Board determined that the rezoning did not promote the health, safety and welfare of Township residents. The Board credited the testimony regarding adverse noise, light and glare associated with the industrial use and also noted Objectors' expert witness's testimony regarding real estate appraisal. Board's Decision at 17; *see* F.F. 30(B). The Board found that the rezoned Property would have an adverse effect on the neighboring residential properties and their value. Board's Decision at 17; *see* F.F. 52. The Board is the arbiter of credibility and weight to be afforded the evidence and we may not engage in factfinding or disturb the Board's credibility determinations on appeal.[8] *See Manayunk Neighborhood*

---

[8] Allen points to the trial court's analysis, stating that if one looks at the "forest" to analyze the rezoning, the rezoning could be held to be proper; however, if one looks at the "trees" (i.e., the immediately adjacent properties), the rezoning created an undue burden on the un-rezoned properties. Trial Court Statement in Lieu of 1925(a) Opinion at 2-3. The trial court states that either decision would be supported by the record, and it gave due deference to the Board. *See id.* Allen argues that these statements establish that the issue is debatable and, therefore, the Ordinances should be deemed valid. However, the trial court's statement that a "forest" view approach could also have been held to be proper is erroneous. As discussed, analyzing the rezoning against parcels that are more remote in location and not in the immediate vicinity of the rezoned subject property is not what is required under a spot zoning analysis. *See* discussion *supra* p. 12.

To the extent Allen argues that the necessity of a credibility determination makes this issue debatable, we disagree. It is in the Board's discretion to decide the weight afforded the evidence.

18

*Council v. Zoning Bd. of Adjustment*, 815 A.2d 652, 658 (Pa. Cmwlth. 2002). Where, as here, the findings of fact are based on substantial evidence, those findings are binding on this Court for purposes of appellate review. *DiMattio*, 147 A.3d at 974. Consequently, in employing a substantive due process inquiry, substantial evidence supports the Board's determination that the rezoning does not promote the health, safety and welfare of Township residents.

Based on the foregoing, we find no error or abuse of discretion in the Board's determination that the Ordinances unjustifiably, arbitrarily, and unreasonably singled-out land for treatment different than similar surrounding land of the same character for the economic benefit of Allen. As such, the Ordinances constitute spot zoning and, therefore, are invalid.

Accordingly, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

---

*Manayunk*, 815 A.2d at 658. If no weight was given to the evidence supporting the contrary conclusion, there can be no competing position to make the issue debatable.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Allen Distribution | : |
| | : |
| v. | : |
| | : |
| West Pennsboro Township | : |
| Zoning Hearing Board | : |
| | : |
| v. | : |
| | : |
| Karl M. Smith, Mark Butler, | : |
| and Betty Butler | : |
| | : |
| v. | : |
| | : |
| West Pennsboro Township, | : |
| Alan D. Shover, William P. Bock, | : |
| and Valerie A. Bock | : |
| | : |
| Appeal of: Allen Distribution, | : |
| Alan D. Shover, William P. Bock | :    No. 524 C.D. 2019 |
| and Valerie A. Bock | : |

# O R D E R

AND NOW, this 11th day of May, 2020, the April 1, 2019 order of the Court of Common Pleas of Cumberland County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge